Argued January 12; affirmed January 26; rehearing denied
March 22, 1932

# PELTON *v.* GENERAL MOTORS ACCEPTANCE CORPORATION

(7 P. (2d) 263, 9 P. (2d) 128)

*Nicholas Jaureguy,* of Portland (Jaureguy & Tooze, of Portland, on the brief), for appellant.

*Henry S. Westbrook,* of Portland, for respondent.

BELT, J. Plaintiff obtained a verdict and judgment against the General Motors Acceptance Corporation for $255 compensatory damages and $5,000 punitive damages, by reason of an alleged conversion

of an automobile. A nonsuit was granted as to the defendant George H. Hoffmiller. No service was had on any of the other defendants. The defendant finance corporation appeals, assigning as error the denial of its motion for nonsuit and directed verdict; the submission to the jury of the question of punitive damages; and the admission of certain evidence.

In view of the assignments of error the statement of facts will be in the light most favorable to plaintiff. In December, 1930, the plaintiff, under the name of John W. Clarkson, purchased the automobile in controversy from the Howard Automobile Company. When the latter company quit business, the conditional sales contract under which the car was purchased was assigned, on the 18th day of July, 1930, to the General Motors Acceptance Corporation. In July and August, 1930, plaintiff defaulted in each of his monthly payments of $67. Thereupon the defendant, pursuant to the terms of its contract with the Fireman's Fund Insurance Company, notified the latter on August 20, 1930, as to such default and directed it to repossess the car. In this notice it was stated that Bert G. Haynes, assistant secretary and credit manager, was authorized in the repossession of the automobile "to take such action in the premises as he may deem necessary." Pursuant to the authorization of the defendant company, the Fireman's Fund Insurance Company, through its agent, George H. Hoffmiller, at about 2 o'clock in the morning of September 5, 1930, located and took possession of the automobile parked in front of the Loraine hotel where the plaintiff lived in the city of Portland. On the afternoon of September 3, 1930, the plaintiff, through his son, had appeared at the office of the General Motors Acceptance Corporation and made the two payments in default. On the day

after the company had accepted these payments, its "credit man," L. M. Broadbent, who had supervision of the contract in question, undertook, as he says, to notify Hoffmiller of the payments made, but was unable to do so as the latter had gone to Corvallis.

The plaintiff thus gives his version of the repossession of the automobile by Hoffmiller:

"Well, I was asleep in bed when I was called on the phone and said they were taking my car; and I went downstairs across the street and the car was hitched on behind a tow car ready to be pulled off, and I went across the street and I met Mr. Hoffmiller, and Mr. Hoffmiller said he had a paper to take the car, and I asked what for, and he said for nonpayment, and I said, 'I made the payment for I have the receipt.' He said 'That can't be possible or they wouldn't order the car taken if you have a receipt for the payment.' I said, 'I have the receipt but I haven't it with me, but drive over to my son's place and he will give you the receipt, for he has it.'"

Hoffmiller did not go with the plaintiff to see the receipts, but took the car to a garage for storage. En route to the garage Hoffmiller suggested that the plaintiff call some member of the finance corporation on the telephone concerning his claim of payment, as he was willing to surrender the car if instructed to do so. Upon arrival at the garage at about 2:30 in the morning, Hoffmiller dialed Broadbent and stood by while the plaintiff talked to him. There is a dispute as to certain parts of this conversation. In reference thereto, the plaintiff testified:

"I told him I had made the payments and that Mr. Hoffmiller had taken the car, and he said that didn't make any difference, they demanded the full payment of the car before they would give it back to me."

Hoffmiller, in response to the question, "What part of the conversation did you hear; what did you hear Pelton say and what did you hear stated over the phone, if anything?" testified:

"Mr. Pelton stated he had made the payments and demanded that Mr. Broadbent would instruct me to return the car to him. Mr. Pelton had the receiver a short distance from his ear, and I did hear whoever was on the other end of the line say, 'No' several times to him."

Broadbent testified concerning this conversation as follows:

"It was right around 2 a. m., the morning of the 5th. My mother called me; I was in bed, asleep; she called me and said I was wanted on the phone. When I answered the phone, the party on the other end said it was Mr. Pelton talking. I said, 'Who'? He said, 'Mr. Clarkson is the name on the contract.' I told him I recalled the name. He then informed me that Mr. Hoffmiller, of the Fireman's Fund Insurance Company, had repossessed his automobile and he demanded its return by 8 o'clock the following morning or he would take court action. He also informed me that he had made two payments to our office, as I understood the day previous. However, being aroused in the middle of the night, I naturally assumed it was the day of the 4th, instead of the early morning of the 5th. Consequently, his saying the day previous, would have meant the 3rd. I told him due to the fact that I had between 2,400 and 2,500 accounts in the office I had no recollection of it, I had no records before me, I was at home, and if he would come down to our office the following morning, I would be glad to discuss the account with him."

On the morning of the day the car was repossessed, Hoffmiller went to the office of the General Motors Acceptance Corporation to report and to leave the storage check for plaintiff's car, which the finance

company refused to accept. Hoffmiller then returned to his office and forwarded the storage check to the defendant by registered mail, whereupon the latter mailed it back to Hoffmiller who advised the finance company that he held it subject to its order. From the manner in which this "hot" storage check was juggled back and forth, it is apparent that neither the finance corporation nor the insurance company wanted this automobile which was surreptitiously taken in the wee hours of the morning while the owner was asleep. Broadbent testified that, upon checking the records in his office the morning of the 5th, it was found that $134, the entire sum in default, had been paid on September 3d. However, he made no effort to see the plaintiff or return the automobile. Plaintiff waited until noon of the day on which his car was taken before consulting a lawyer. On the following day, September 6th, this action was commenced.

■ It is clear that the defendant finance corporation, through its agent Hoffmiller, was guilty of converting the property of plaintiff to its own use and benefit. Defendant was not entitled to a nonsuit or a directed verdict. Counsel for defendant concedes that it would be proper to affirm the judgment for the amount of compensatory damages.

■ The major question presented on this appeal is whether the defendant corporation is liable in punitive damages. Relative to this question the defendant contends: (1) That there is no evidence that any person acting for the General Motors Acceptance Corporation did anything to indicate malice, ill will, or disregard of the rights of the plaintiff; (2) that if any wrong was committed it was on the part of Broadbent and that his relation to the company was not such as to bind it to

the extent of making it respond in punitive damages; (3) that any right to punitive damages was waived by joining the other defendants against whom no damages were assessed.

On the morning of the 5th of September, when Broadbent talked to the plaintiff on the telephone about Hoffmiller's repossession of the automobile, he must have known that plaintiff had made all of the payments due under the terms of the conditional sales contract as he had tried to locate Hoffmiller to advise him of such payments on the day following their receipt. The jury apparently did not believe the testimoney of Broadbent as to that part of his telephone conversation wherein he stated that he did not know whether the payments had been made or not. If, in fact, Broadbent did know that the plaintiff was not in default at the time Hoffmiller took possession of his car and refused to order the release of the car, the jury would be warranted in inferring that Broadbent was actuated by improper motives and that he had acted with utter disregard for the property rights of the plaintiff. Furthermore, there was no disposition on the part of the defendant to correct the mistake when fully advised that one had been made. It was content to keep both the car and the payments, notwithstanding it must have known that the rights of the plaintiff were being violated.

■■ There is much confusion and uncertainty in the authorities relative to the law of punitive damages as applied to corporations: Fletcher Cyc. Corporations, vol. 5, section 3354; Thompson on Corporations (3d Ed.) section 5499; 8 R. C. L., p. 596; 14a C. J. 782. Whatever may be the rule in other jurisdictions, it seems to be settled here that a corporation is not liable in punitive damages for the wrongful act of its menial

agent unless such act was authorized or ratified: *Sullivan v. O. R. & N. Co.*, 12 Or. 392 (7 P. 508, 53 Am. Rep. 364); *Bingham v. Lipman*, 40 Or. 363 (67 P. 98); and such seems to be the rule whether corporations or individuals are involved: *Gill v. Selling*, 125 Or. 597 (267 P. 812, 58 A. L. R. 1556). However, we do not consider that Broadbent may be classified as an inferior or menial agent. He was directed by the credit manager to exercise supervision over the collection of the amount due under the contract with the plaintiff. Prior to such direction the credit manager had authorized the Fireman's Fund Insurance Company to repossess the car. The action of Broadbent could well be looked upon as one of a managing officer and, therefore, what he did amounted to a participation by the corporation in the violation of the rights of the plaintiff. At any rate, we think there was evidence tending to show ratification by the defendant finance corporation of the wrongful act of its agent in refusing to surrender possession of the car after knowledge that plaintiff was not delinquent in his payments. We conclude that the finance corporation cannot avoid liability for the acts of Broadbent, its credit man, whose duty, according to the uncontradicted testimony was the "supervision of credits, collection of delinquent accounts, and general handling of dealer and contract work."

■ Plaintiff joined the General Motors Acceptance Corporation and George H. Hoffmiller as defendants upon the theory that they were joint tortfeasors. It is not for the defendant finance corporation to complain that plaintiff was not successful in obtaining a verdict and judgment against both. Plaintiff might well be heard on that subject. If a judgment had been rendered against both defendants in punitive damages and one of them, under the law, was liable only in compensatory

damages, the contention of waiver as urged by the appellant would be sound, since there can be no apportionment of damages among joint tortfeasors: *Gill v. Selling,* supra.

■ It is also urged that, aside from the question of payments, the defendant had the right to repossess the car for the reasons (1) that the plaintiff, without the knowledge and consent of the defendant, had taken the car into Washington and registered same under the name of J. W. Jackson, and (2) that the plaintiff was making an illegal use of the car by transporting intoxicating liquor. It is conceded, however, that the sole reason assigned for the repossession of the car was the alleged default in payments. We can determine this case only under the issues as made in the pleadings and, since defendant saw fit to allege default in payment alone as ground for the repossession of the car, we must confine ourselves to such issue.

■ We see no objection to the reception in evidence of the letters written by Hoffmiller to the General Motors Acceptance Corporation. As we view the record, Hoffmiller was acting for and on behalf of the defendant company and the letters tended to show the alleged conversion of the automobile. At least, from the viewpoint of the plaintiff, they were declarations against the interests of both Hoffmiller and the finance corporation. It is true that an agency cannot be established merely by the declarations of the agent, but, in this case, the authorization of Hoffmiller to act on behalf of the finance corporation was conferred before the writing of the letters in question.

■■ The amount of punitive damages awarded by the jury seems to the writer large, but, in view of the admitted wealth of the defendant company, which is a

factor to be taken into consideration in the assessment of punitive damages, it is believed that this court would not be warranted in saying, as a matter of law, that there is no evidence to support the same. The jury, in awarding the sum of $5,000, no doubt concluded that such a sum was necessary in order to deter the defendant finance corporation from violating the property rights of those who purchase automobiles under conditional sales contracts.

Finding no error in the record, the judgment of the lower court is affirmed.

BEAN, C. J., BROWN and CAMPBELL, JJ., concur.

---

Petition for rehearing denied March 22, 1932

## ON PETITION FOR REHEARING
### (9 P. (2d) 128)

BELT, J. We agree that it was not accurate to state in the original opinion that ''counsel for defendant concedes that it would be proper to affirm the judgment for the amount of compensatory damages.'' Counsel for defendant, however, did say in effect that, rather than have the case reversed and remanded for a new trial, the defendant would consent to a judgment for the amount of compensatory damages.

Criticism is directed to the following italicized portion of the opinion wherein it was stated: ''We can determine this case only under the issues as made in the pleadings and, *since defendant saw fit to allege default in payment alone as ground for the repossession of the car, we confine ourselves to such issue.*''

We agree that under a general denial the defendant had the right to attack the title of the plaintiff or his

right to possession of the automobile by offering in evidence anything which would tend to refute the allegations of ownership or the right to possession. However, in the instant case, default in payment alone was alleged as a ground for repossession of the car and it is conceded in the brief of appellant that such was the only reason assigned when the car was repossessed. We are firmly of the opinion that, in reviewing a case on appeal, we should confine ourselves to the theory upon which it was tried in the lower court. In the brief upon petition for rehearing, counsel for defendant states that his only purpose in alleging default in payment and a balance due under the conditional sales contract was to afford a basis for mitigation of compensatory damages: *Barber v. Motor Investment Co.*, 136 Or. 361 (298 P. 216). If it was the purpose to plead a partial defense, it should have been so alleged. As stated in 49 C. J. 209, "A partial defense when not pleaded as such is to be treated as a complete defense."

This case was given careful consideration on original hearing and we can see no reason for disturbing the judgment of the lower court. The verdict was large but we are not prepared to say that it indicated passion or prejudice on the part of the jury.

The petition for rehearing will be denied.

Bean, C. J., Brown and Campbell, JJ., concur.