Argued February 24; reversed April 13; rehearing denied
May 11, 1937

# BOWLES *v.* CREASON ET AL.

(66 P. (2d) 1183)

*B. L. Eddy*, of Roseburg (H. A. Canaday, of Roseburg, on the brief), for appellant.

*A. N. Orcutt*, of Roseburg (Rice & Orcutt and M. L. Hallmark, all of Roseburg, on the brief), for respondents.

CAMPBELL, J. On December 9, 1935, plaintiff and one Robert E. Benner were residing on a tract of land which they had leased from defendant Leona Creason some three or four months prior thereto. At the same time they were in possession of a team of horses which had been turned over to them by Mrs. Creason, at the time she leased the premises, to care for and feed until she made some other disposition thereof. Defendant Percy A. Webb, at the time, was sheriff of Douglas county and in control of the county jail and in charge of the prisoners therein. Defendant Clifford Thorton was his duly appointed deputy, and defendant Fred Perry was a state police officer. Some

difference arose between plaintiff and the defendant Creason as to the possession of the said team of horses.

Shortly before December 9, Mrs. Creason sold the team to another party, but plaintiff refused to deliver the team to the purchaser, claiming that he had an unpaid bill for the care and feeding of said team and asserting that he would not deliver the team until said bill was paid. Thereupon, defendant Creason consulted her attorney and was advised that as plaintiff came into the possession of the team lawfully she could not replevin the same until she made a demand.

Mrs. Creason requested Thorton to accompany her to the farm where she wished to make a demand on plaintiff and his partner for the possession of the team, and if they were delivered to take them away. Defendant Thorton requested defendant Perry to accompany him. Neither Mrs. Creason nor either of the officers had any writ or process against the plaintiff of any nature whatsoever. These three defendants thereupon drove to the farm which is located about twenty-one miles from Roseburg. On the way to the farm they engaged a Mr. Bailey and his truck for the purpose of transporting the team from the farm.

A short distance from the farm they met plaintiff and his partner traveling towards Roseburg. Defendants continued on to the farm and, shortly after arriving there, plaintiff and his partner also arrived. The leased premises are located about three-fourths of a mile from the county road and it is necessary to travel over a private way to reach them. Mr. Bailey drove his truck to the entrance of this private way and parked his truck on the county road and remained there until the plaintiff and defendants left the farm.

When plaintiff and his partner arrived at the farm, defendant Creason made the demand for the posses-

sion of the team, which was refused. Up to this point there appears to be no material difference between the parties as to the facts.

It appears that this refusal was followed by angry words between the plaintiff and Mrs. Creason. Plaintiff contends that Mrs. Creason started to walk towards a barn and that he simply notified her not to go near the barn, while the defendants contend that when Mrs. Creason started to walk away and towards the barn plaintiff hurriedly followed her and she turned around facing the plaintiff who thereupon became very abusive and violent, grasped her by the wrists and jerked her around. Thorton thereupon placed plaintiff under arrest, took him to the car where he handcuffed him and later took him to the county jail at Roseburg where they arrived about noon.

After the arrest of plaintiff, the team of horses were delivered to Mrs. Creason, defendants claiming that plaintiff told his partner to deliver them and plaintiff stoutly denying any such statement. At any rate the team was driven down to the county road and turned over to Mr. Bailey who took them away in his truck.

The matter was referred to the district attorney about 1:30 p. m. who investigated it and shortly after 2 o'clock prepared a complaint or information sworn to by defendant Thorton, charging plaintiff with assault and battery upon Mrs. Creason, which was filed with the justice of the peace sometime that afternoon. It is admitted that the justice of the peace was in his office in the courthouse that day, and up to as late as between 4 and 5 o'clock p. m. Plaintiff's attorney was notified at about 1:30 p. m. and consulted with the district attorney on the matter and claims to have

requested the sheriff to take plaintiff before a magistrate. The evidence does not show the exact time the justice of the peace left his office that evening. Near 5 o'clock plaintiff's attorney tried to locate the justice by going to the post office and by going to his home, but was unable to find him.

The next morning at 10 o'clock, plaintiff was taken before the justice of the peace where he waived examination and was bound over to the grand jury. Later an indictment was returned against him on the charge, endorsed not a true bill. The charge thereupon was dismissed.

Thereafter the plaintiff filed this action for false arrest and false imprisonment against Mrs. Creason, Thorton, Perry, and Percy A. Webb, sheriff of Douglas county.

The gist of plaintiff's complaint is that defendants Creason, Thorton and Perry conspired together to get possession of the team unlawfully and, as a part of said conspiracy, he was falsely arrested and falsely imprisoned and confined in the county jail; that, in making the arrest, defendant Thorton tried to explode a tear gas gun in his face and placed him in handcuffs; that on his arrival at the jail, he was searched and certain personal property taken from him which was not returned to him until he was released. He further alleged that he repeatedly requested of Thorton and Webb that he be allowed to furnish bail so he might return home that evening, but that such requests were refused. He further alleged that, about 2 o'clock on the said day, he requested defendant Webb to take him before a magistrate and permit him to give bail, and was informed by the sheriff that, as soon as defendant Creason should file a complaint, his request would be

complied with. He further alleged that he suffered humiliation and much inconvenience by reason of such arrest and imprisonment and prayed for damages in the sum of $10,000.

Defendants Creason, Thorton and Perry answered admitting the arrest and imprisonment, and for a further and separate answer and defense accounted for the presence of the officers on the premises by alleging:

"That the plaintiff is a man of violent and uncontrollable temper and given to acts of violence, and had heretofore assaulted an employee of the defendant Leona Creason, and defendant Creason was in fear of physical violence at the hands of said plaintiff."

As a justification of the arrest, defendants alleged that plaintiff committed an assault and battery upon defendant Creason in the presence of defendant Thorton and defendant Thorton had placed plaintiff under arrest.

Defendant Webb answered separately admitting the facts of the arrest and imprisonment and by way of justification set up the facts alleged in the other defendants' answer and further stated that the case was handled in the usual manner in which other criminal cases are handled.

Plaintiff in his reply denied all the new matter set up by defendants in their answers and denied that he had committed any assault upon Mrs. Creason.

The cause was tried to a jury. At the close of plaintiff's case in chief, the court allowed a motion for an involuntary nonsuit in favor of defendant Webb. The jury returned its verdict in favor of the remaining defendants. Plaintiff appeals.

■ The first assignment of error is predicated upon the ruling of the trial court in refusing to strike defend-

ant Creason's answer to a question regarding her conversation with the plaintiff at the time of the altercation.

While Mr. Benner was on the stand as a witness for plaintiff, he was asked what care and feed had been given to the team and he answered: "We fed them grain * * *". Thereupon the court, on its own volition, interrupted the witness and advised counsel that it was unnecessary to go into that matter.

Thereafter, defendant Creason testified that at the time of plaintiff's arrest, when she demanded possession of the team, plaintiff told her that she could not have possession of the team until she paid the feed bill; that she rejoined by saying: "No I didn't, I left feed in the barn—about 16 tons."

Counsel for plaintiff contends that, because plaintiff's witness was not permitted to describe what care and attention was given the team, defendant's answer should be stricken out as to what she said at the time of the altercation about the feeding of the team. The court properly ruled that what was said and done as part of the altercation at the time of the arrest should be admitted as evidence. While the fact as to the care and attention that was actually given to the team was no part of plaintiff's case, no claim is made in any of these proceedings that the plaintiff did not care for and feed the team or was not lawfully in possession of the team of horses at the time the demand was made by defendant Creason.

■ This assignment of error is based on the court's refusal to permit the re-examination of Bowles on the matters brought out on cross-examination.

On cross-examination, plaintiff was asked:

"* * * I said, 'Mrs. Creason, you are not going in that barn'.

Q. Was she walking in at that time? She was walking to go into the barn.

Q. Where were her horses? A. Up at the other barn.

Q. If they were up at the other barn, why didn't you want her to go into this particular barn?

\* \* \*

A. Because Mrs. Creason has told me before she would like to burn that barn. She has had many fires, and I wasn't going to permit her to go in that barn where our horses were.

Q. You were afraid she would burn that barn? A. She was in a bad state of mind and I wouldn't have let her go in that barn. She had told me before that she would like to burn that barn down and the old house too."

On redirect examination, counsel for plaintiff asked him the following question:

"Q. On your cross-examination, Mr. Bowles, counsel brought out something about the burning of the buildings on that place. Now, just tell the jury what took place about that.

A. She was talking about the house. She wanted us to live in a tent and could set fire to the old house and we could get a new house and we told her we couldn't do it \* \* \*".

Then followed an objection by counsel for defendant which was sustained by the court.

Defendant Creason had no right to go into the barn against the will of plaintiff and it was immaterial what the reasons of plaintiff were that he did not want her to do so. However, plaintiff had given his reason why he did not want Mrs. Creason to go into the barn, and his cross-examination by defendant did not warrant the testimony that was sought to be elicited on redirect examination. The court committed no error in sustaining the objection to this question.

■ This assignment of error is based on the refusal of the court to permit plaintiff's witness Ben S. Serafin to testify as to the conversation that took place at the time defendant Creason turned over the team of horses to plaintiff and his partner.

This was an immaterial matter and the objection was properly sustained. Plaintiff made no offer of proof: *Ashmun v. Nichols*, 92 Or. 223 (178 P. 234, 180 P. 510); *Riley v. Good*, 142 Or. 155 (18 P. (2d) 222).

■ This assignment of error is based on the court granting an involuntary nonsuit in favor of defendant Percy A. Webb, the sheriff.

Plaintiff testified that at about 2 o'clock in the afternoon on December 9th, the day of his arrest, he requested the sheriff to take him before the magistrate so he could give bail; that the sheriff informed him that as soon as defendant Creason would file a complaint his request would be complied with. It is admitted that defendant Webb was in charge of and had control of the county jail of Douglas county and that plaintiff was confined therein. It is also admitted that plaintiff was arrested without a warrant and confined in the county jail without a commitment, and the sheriff, therefore, had no authority to continue his confinement and it became his duty to take him before a magistrate without unreasonable delay. The sheriff could not justify the confinement of plaintiff by awaiting the pleasure of defendant Creason, or anyone else, to file a complaint. It is also admitted that defendant Thorton is a duly appointed deputy sheriff.

■ A sheriff is responsible for the acts of his deputy: § 31-304, Oregon Code 1930; *Crossen v. Wasco County*, 6 Or. 215. This, of course, would mean that the sheriff is responsible for the official acts of his deputy. Official

act means "any act done by the officer in his official capacity, under color and by virtue of his office": *Turner v. Sisson*, 137 Mass. 191, and approved in *Miles v. Wright*, 22 Ariz. 73 (194 P. 88), and reported in 12 A. L. R. 970. In this last case mentioned, the authorities, as to what constitutes an official act, are extensively discussed and the above-quoted rule of *Turner v. Sisson*, supra, is adopted by many courts.

Section 13-2111, Oregon Code 1930, gives a peace officer authority to arrest without a warrant one who is committing or attempting to commit a crime in his presence. That the arrest of plaintiff was an official act of the deputy, done "under color and by virtue of his office" cannot be doubted. Defendant Webb, in refusing to take plaintiff before a magistrate until defendant Creason had signed a complaint was aiding the illegal detention of plaintiff, and therefore became responsible for the acts of his deputy, Thorton. In 102 A. L. R. 182, supplementing the annotation in 1 A. L. R. 236 and 12 A. L. R. 980, are collated the more recent cases which announce the general rule that a sheriff is liable for the acts or omissions of his deputy while such deputy is acting officially or under color of office.

■ Under this state of the record, the liability of defendant Webb should have been submitted to the jury, and it was error to grant an involuntary nonsuit.

The next assignment of error is based on the court's refusal to allow plaintiff to cross-examine on a certain matter on which the defendant Creason was examined in her direct examination.

It was alleged in defendant Creason's answer that she took the officers along with her to protect her from any violence at the hands of plaintiff when she went to make the demand for the team of horses. On direct

examination she was asked why she feared any violence, and she explained that she saw plaintiff "club a man down" in a dispute. Also, that when she remonstrated with plaintiff at that time he advised her that if she did not keep out of it she would receive some of the same. On cross-examination, counsel for plaintiff asked her who the man was that plaintiff had the dispute with and what the dispute was over. She answered that the man was a Mr. Williams who had been a former husband of hers and that the dispute was over checking some cattle and that Mr. Williams had no interest in the cattle.

The court then suggested that it was not necessary to go into the details of the fight. For the purpose of preserving the record, counsel asked defendant Creason: "Isn't the truth that Mr. Williams took a knife out and said to Mr. Bowles, 'I will cut your heart out'?" This question was objected to and the objection sustained. "Q. And was it then that Mr. Bowles struck Mr. Williams?" "A. No." The court sustained an objection to that question and the answer was stricken.

■ Cross-examination is a valuable right that belongs to the cross-examiner and should not be limited unduly: *Mannix v. Portland Telegram,* 136 Or. 474 (284 P. 837, 297 P. 350, 300 P. 350). When the cross-examination is in respect to a collateral matter incidental to the main issue, the court need not permit it to be unduly extended and his action thereon will not be reviewed except for an abuse of discretion.

"As a means to this end, when a witness has been examined in chief, the adverse party has the right to cross-examine him for the purpose of showing the situation of the witness with respect to the parties and to the subject of the litigation, his interest, his motives, his inclination and prejudices, his means of obtaining a

correct knowledge of the facts to which he has borne testimony, and the manner in which he has used these means, his power of discernment, memory, and description, so that the jury may have the opportunity of observing his demeanor, and of determining the just weight and value of his testimony.

\* \* \*

"It is obvious, therefore, that a cross-examination is allowed a free range, if kept within the subject matter of the testimony given, expecially as the cases show, where the person examined is a party or an unwilling witness. This being so, the right of cross-examination is a substantial right, which cannot be restricted so as to prevent the adverse party from going fully into all matters connected with the direct examination." *Sayres v. Allen,* 25 Or. 211 (35 P. 254).

■ This principle of law has been followed consistently by this court in its subsequent decisions: *Marshall v. Brown,* 108 Or. 658 (218 P. 923) ; *Mannix v. Portland Telegram,* supra; *Hayes v. Ogle,* 143 Or. 1 (21 P. (2d) 223). It was error to restrict plaintiff's cross-examination.

■ Mrs. Hazel Hodges was called as a witness for plaintiff in rebuttal. She testified that she lived on a piece of land near the entrance to the private way that leads to the premises in question. After Mr. Bailey had parked his truck on the county road he came to her house. He asked if he could remain out of sight for a time. She invited him into the house where she carried on a conversation with him. This conversation had no relation to the team of horses or why he was there. He remained at her house until after the officers and Mr. Bowles left the farm. In pursuing the examination further counsel asked Mrs. Hodges: "At this time just after the car with the officers and Mrs. Creason and Bowles had gone through the gate and down the road, did Bailey say anything about the horses?"

The court sustained an objection to this question on the ground that it was an impeaching question and no proper foundation had been laid.

Counsel for plaintiff offered to show that if the witness were permitted to answer she would testify that at that time, as above stated, Bailey had said: "Now we can get the horses" and then ran down the hill towards the truck.

Mr. Bailey had been called as a witness for defendants and testified that he had been at the Hodges house where he remained for some time. Nothing was asked him regarding any conversation that he had with Hazel Hodges while he was at the house. Nowhere in the pleadings or in the evidence is there any claim made by plaintiff that Mr. Bailey had entered into any conspiracy or had done anything or attempted to do anything unlawful in regard to the transportation of the team from the premises in question. It was, therefore, not intended as an admission by a co-conspirator or by an agent of any one of the defendants. If it were intended as an impeaching question, no proper ground had been laid therefor. If it was not so intended it would not be proper rebuttal testimony as it would not tend to rebut anything that Mr. Bailey had said or done. It could not bind any of the defendants as it was not made in their presence. Neither was it part of the *res gestae.*

■ This assignment of error is based on the court's refusal to give the following quoted part of plaintiff's requested instruction:

"If you find from the evidence that the defendants Thorton and Perry accompanied the defendant Leona Creason to the premises of plaintiff for the purpose of obtaining possession of property which the plaintiff

claimed the right of holding, and without any writ or process of court, and the said Creason, Thorton and Perry went upon the premises of plaintiff in order to obtain possession of said team of horses, without having recourse to the forms of law, then I instruct you that all of said defendants were trespassers and the plaintiff would have a right to make all reasonable resistance to any effort to take property lawfully in his possession, and if necessary in order to protect his property he would have the right to go to the extent of assault and battery.''

It will be observed that this instruction covers several propositions. The court had already instructed the jury that it was admitted in the pleadings that defendants when they went upon the premises had no writ or process for the arrest of plaintiff or for the recovery of the property. The rest of the instruction requested is objectionable on the ground that it would tend to mislead the jury in regard to the object defendant had in view in going upon the premises. If the defendants went on the premises to get possession of the team of horses by lawful means or if they went upon the premises to demand possession of the horses, they would be licensees until they committed some unlawful act or were requested by plaintiff to leave the premises: § 14-371, Oregon Code 1930. If, however, they attempted to take the horses by force, then the defendant would have the right to defend his possession by all reasonable means. The objection to the requested instruction is that it leaves out the element of force or unlawfulness on the part of the defendants in their attempt to get possession of the horses.

But, as the case will have to be retried, we will avoid future mistakes by calling attention to the instruction that should have been given. The court properly instructed the jury in defining assault and battery. The

plaintiff's theory of the case was that he did not wish Mrs. Creason to enter a certain barn and that he told her not to do so.

Ordering defendant Creason not to enter a certain barn or building or having attempted to prevent her from entering said building, would not amount to an assault, the building being in the lawful possession of plaintiff. That is, the defendant Creason would have no right to enter the building against the will of plaintiff, and if she did so attempt plaintiff could use such force as would be reasonably necessary to prevent such entrance. The court was advised on this question, but refused to give the instruction because plaintiff did not admit an assault and plead justification. However, evidence was admitted, without objection, of the circumstances surrounding the altercation that took place, and plaintiff testified that when defendant Creason started to walk towards the barn he followed her and that he would have used force to keep her out. It is not material what reasons he had for keeping her out; he had the right to do so. We think that plaintiff would be entitled to an instruction to that effect.

This assignment of error is based on the refusal of the court to give a requested instruction of the same tenor and purport covered by assignment of error No. 7.

What we have said in relation to assignment No. 7 applies with equal force to this assignment.

The next assignment of error is predicated on the refusal of the court to give the following requested instruction:

"It is claimed on behalf of the defendants that the plaintiff was arrested for committing an assault in the presence of the officers who arrested him. I have already instructed you as to the plaintiff's rights and

his liability for assault, if any was committed, and I now instruct you that it is the duty of any officer arresting a person without a warrant for an offense alleged to have been committed in his presence, to take the person arrested without delay, and as soon as he can reasonably do so, before some magistrate, to be charged with the alleged offense by affidavit or sworn complaint. If this requirement of the law is not met, then there is no authority for holding the person arrested. If the officer claiming to have arrested a person for an offense committed in his presence shall fail to take the person so arrested before a magistrate, as soon as he can reasonably do so, then the person making the arrest is liable in an action for damages.''

The court, on this phase of the case, gave the following instruction:

''The law provides that a person arrested must in all cases be taken before the magistrate without delay. By that is meant within a reasonable time, taking into consideration all of the facts and circumstances of the case. If you find from the evidence that the plaintiff was arrested for a violation of the law committed in the presence of the officers and restrained in jail, then the arresting officer would have a reasonable time within which to file with the magistrate a complaint against the plaintiff and within which to take the plaintiff before such magistrate. In determining what was a reasonable time for such purpose, you must take into consideration all the facts and circumstances of the case. If you find from the evidence in this case that the plaintiff Bowles was represented by an attorney within a short time after his restraint in jail, and that any delay, if you find there was delay, in taking the plaintiff before a magistrate was caused by or due to any acts of the plaintiff Bowles or his attorney or on account of the inability to find a magistrate, then there would be no cause of action against the defendant officers, Thorton and Perry, on account of such delay and the restraining of the plaintiff of his liberty during the time of such delay.''

■ This instruction correctly states the law generally in regard to arrest, but, in the instant case, there is no evidence tending to show that the arresting officer made any attempt to find a magistrate before whom he might bring plaintiff nor did he attempt to justify the detention of plaintiff by reason of his inability to find a magistrate. That part of the instruction, just quoted, that inability to find a magistrate might excuse the delay was purely abstract and not in any way an issue in this case. The law imposes a mandatory duty upon an officer making an arrest without a warrant to without delay bring such person before a committing magistrate where he can be charged with the crime for which he was arrested by affidavit or complaint. This duty is not complied with on the part of the officer by taking the prisoner before the district attorney. And he must exercise reasonable diligence and put forth some effort in carrying out the mandate of the law. It is not the duty of the prisoner or his attorney to hunt up a magistrate. That duty is imposed upon the arresting officer. And we think that in the instant case an instruction to that effect should have been given: § 13-2021, Oregon Code 1930.

■ This assignment of error is based on the refusal of the court to give plaintiff's requested instruction No. 4 to the effect that when the officers accompanied Mrs. Creason upon the premises of plaintiff they were trespassers. This contention of plaintiff is untenable as shown by the principles announced in assignment of error No. 7.

■ This assignment of error is based on the refusal of the court to give plaintiff's requested instruction regarding the measure of damages.

In this connection, the court instructed the jury as follows:

"If you find your verdict for the plaintiff, then in assessing damages to be awarded to him you are to take into consideration the matter of the force applied to the plaintiff, the indignity and humiliation, if any, which he suffered, the sense of shame and mortification which he experienced, if any, and inconvenience, hardship and humiliation of actual imprisonment in the county jail, if any, and you are to award the plaintiff, if your verdict be in his favor, such sum as under all of the circumstances of the case you may deem fair and reasonable compensation, and that is what the law calls general damages. If you find for the plaintiff and award him general damages and if you further find that the plaintiff was falsely arrested and falsely imprisoned and that such false arrest and false imprisonment were malicious, then you may also award the plaintiff, in addition to such general damages, such sum as may be proper by way of what the law calls punitive damages, or damages by way of punishment. If you find for the plaintiff and award him both general damages and punitive damages, the sums must be set forth separately in your verdict, and you cannot in any event, award a total verdict of over the amount demanded in the complaint, which is Ten Thousand ($10,000.00) Dollars. Before you can find punitive damages you must find that the acts of the defendants were malicious. In its legal sense a malicious act is any wrongful act done intentionally without just cause or excuse. It is not necessary that there should have been any spite or hatred or bad feeling on the part of the defendants toward the plaintiff to constitute malice, but any wrongful act done intentionally tending to injure without just cause or excuse is malicious."

This instruction was more favorable to plaintiff than he was entitled to and he had no reason to complain. However, as the cause will be remanded for a retrial, we suggest that this instruction should be sup-

plemented with the additional instruction that if the jury finds for the plaintiff against more than one defendant it also would be necessary to find, before it could award punitive damages, that all of such defendants acted maliciously: *Gill v. Selling*, 125 Or. 587 (262 P. 812, 58 A. L. R. 1556); *Pelton v. General Motors A. C.*, 139 Or. 198 (7 P. (2d) 263, 9 P. (2d) 128).

"If a wrong is done by two or more persons jointly and all are sued together, if only one of them or less than all, acted upon such motives as are condemned by the law and punished by exemplary damages, the motive of some will not be imputed to the others, and the liability of the latter will not extend beyond compensatory damages. In such a case the plaintiff has his election to proceed against any or all of the wrongdoers. By making them all defendants he waives his right to exemplary damages if some of them are not subject thereto." Sutherland on Damages, 4th Ed. § 407.

■ The next assignments of error are predicated on certain requested instructions not given by the court in the wording of the requests.

The instructions requested are quite complex, complicated and subject to criticism of duplicity and were all correctly covered by the trial court in his general charge.

■ The court instructed the jury as follows:

"As to the team of horses which had been referred to in the testimony, it is admitted that the team was owned by the defendant Creason and that on December 9, 1935, it was in the possession of plaintiff Bowles and one Benner. The defendant Creason claims that she went to the premises where the team was kept on that date for the purpose of demanding possession of the horses preparatory to bringing an action for their possession. Before she could bring an action of replevin against the plaintiff for possession of the team, it was

necessary for her first to demand possession of them from the plaintiff. There is, however, no issue before you for determination as to whether the defendant Creason or the plaintiff Bowles had the right to the possession of the horses. You may consider the necessity of a demand of possession and the question of whether or not a demand was made only for the purpose of determining the intention and purpose of the defendants in going to the premises where the horses were kept."

This instruction was excepted to by plaintiff. It correctly states the law as applied to the facts in the instant case. It was admitted by all the parties that plaintiff had come into possession of the team lawfully; therefore, before defendant Creason could bring an action for the possession of the team, it would be necessary for her to make a demand on plaintiff.

She alleges in her answer that she went upon the land of plaintiff for the purpose of making such demand, while the plaintiff contends that she went there to take the team of horses away from him by force. She would have no right to repossess the team by force. The court, therefore, instructed the jury that there was no issue as to who was entitled to the possession of the team.

■■■■ These assignments of error relate to the giving of certain instructions by the trial court, excepted to by plaintiff.

Assignment of error No. 18, raised the same questions as assignment No. 7 and there is no need for further discussion.

Assignment of error No. 19 is discussed under assignment of error No. 14 and what was said there applies to this assignment.

No. 20 is a summation of defendants' theory of the case. The subjects of arrest, assault and battery and unnecessary delay in taking an accused before a magistrate have been fully considered in this opinion and it is not necessary to discuss them further.

For the reasons before stated, the judgment of the circuit court will be reversed and the case remanded for such further proceedings not inconsistent herewith. It is so ordered.

BEAN, C. J., and BAILEY and RAND, J. J., concur.