Motion to dismiss appeal denied March 22; argued on the merits
September 27; modified October 18, 1938

## FULLER ET AL. v. BLANC

(77 P. (2d) 440, 83 P. (2d) 434)

*Burleigh & Burleigh,* of Enterprise, for the motion.

*Jesse Crum,* of Elgin, opposed.

BEAN, C. J. The respondents move to dismiss this appeal for the reason that the notice of appeal was not served within the time limited by section 7-503, Oregon Code 1930.

On Saturday, October 23, 1937, the jury returned a verdict in favor of plaintiff at 5:15 o'clock, p. m. The hour being late the verdict was received and the jury discharged. On Monday, October 25, 1937, the clerk of the court prepared an entry of judgment on the verdict and the same was signed by the judge and the clerk entered the judgment in the journal of the court as of October 23, 1937, the day upon which the verdict was received. On December 24, 1937, defendant served and filed a notice of appeal describing the judgment in favor of plaintiffs and against the defendant, as having been rendered on October 23, 1937. The affidavit of the clerk of the circuit court shows the return of the verdict and the preparation and entry of the judgment order on October 25, which was given and signed by the circuit judge. It therefore appears that the judgment in the case was actually rendered on October 25, 1937. Afterwards, upon an application, the court corrected the date of the judgment entry making the same October 25, 1937, instead of October 23, 1937, as being an error on the part of the clerk.

The respondents contend that the entry of the judgment was properly made on the 23d of October, 1937, and that the circuit court had no authority to correct the date so as to read October 25, 1937, and that in entering the judgment the clerk followed the provisions of section 2-1509, Oregon Code 1930, which provides in

part that if the judgment has been given in term time, it may be entered at any time during the term, of the day's proceedings on which it should have been entered.

It should be noticed that section 7-503, subd. (5), provides that upon appeal to the supreme court, notice of appeal shall be served and filed within 60 days from the *entry* of the judgment order or decree appealed from. (We italicize.)

■■ We fail to see how the clerk could enter the judgment on October 23, 1937, before the judgment was rendered. The judgment having been actually rendered on October 25, 1937, we think the court was authorized to correct the date of the judgment entered on proper application. The 60 days did not commence to run until the judgment was actually entered.

Section 2-1509, Oregon Code 1930, provides as follows:

"When the clerk is unable or omits to enter judgment within the time prescribed in this chapter, if the judgment has been given in vacation, it may be entered at any time thereafter, of the date which it is actually entered; if it has been given in term time, it may be entered at any time during the term, of the day's proceedings on which it should have been entered, or, on motion of the party entitled, at any subsequent term, of the day on which it is actually entered."

And section 2-1506 provides:

"If the trial be by jury, judgment shall be given by the court in conformity with the verdict and so entered by the clerk within the day on which the verdict is returned."

■ These provisions in regard to the entry of the judgment by the clerk are directory and a judgment entered after the day on which a verdict is rendered is a valid judgment and it has been held that the judgment

within the day evidently means within 24 hours; otherwise the verdict returned just before midnight would be ineffectual unless a judgment could be entered thereon at the last moment of that day, as held by this court: *Casner v. Hoskins*, 64 Or. 254, 281 (128 P. 841, 130 P. 55); *Strickler v. Portland Ry. L. & P. Co.*, 79 Or. 526 (144 P. 1193, 155 P. 1195). In *Skelton v. Newberg*, 76 Or. 126 (148 P. 53), we read:

"No penalty is attached or forfeiture prescribed for a failure to give or enter a judgment within the day the verdict is returned. * * *

"We conclude, therefore, that section 201, L. O. L. (§ 2-1506. Oregon Code 1930), as amended, is not mandatory, and that the delay of 24 days in giving and entering the judgment after the verdict was returned was not so unreasonable as to deprive the court of power to determine the matter."

■ The court had the right to correct an obvious error in its records at any time during the term, when called to its attention. In *Grover v. Hawthorne*, 62 Or. 65, 71 (116 P. 100, 121 P. 804), we said:

"Every court of record has the inherent right and power to cause its acts and proceedings to be correctly set forth in its records. It is the duty of the clerk as an instrument of the court to make such a memorial; and, whenever it is properly brought to the knowledge of the court that this was not done at the time of the proceeding, the authority of the court to cause a record to be made in accordance with the facts is undoubted."

■■ The motion to dismiss also raised the question by respondents that the notice was insufficient for the reason that it gives the date of the judgment as the 23d of October. Section 7-503 provides:

"Such notice shall be sufficient if it contains the title of the cause, the names of the parties and notifies the adverse party or his attorney that an appeal is

taken to the Supreme or circuit court * * * from the judgment, order or decree, or some specified part thereof.''

There is no suggestion that any other judgment was rendered in favor of the plaintiffs and against the defendant, except the one mentioned, and we think that the notice was sufficient to inform the plaintiffs, upon an inspection of the notice of appeal, giving the same a fair construction or reasonable intendment and without resort to evidence aliunde the transcript, that the appeal is taken from the judgment in the case, and it is sufficient to confer jurisdiction of the same: *Raiha v. Coos Bay C. & F. Co.*, 77 Or. 275 (143 P. 892); see also *McFarland v. Hueners*, 96 Or. 579 (190 P. 584).

As the judgment was actually entered in the circuit court on Monday, October 25, 1937, although the notice of appeal gave the date as of the 23d, we think the notice of appeal was sufficient in that respect. It was filed within 60 days of the correct date of the judgment entry: § 7-503.

Therefore the motion to dismiss must be denied. It is so ordered.

---

Argued on the merits September 27; modified October 18, 1938

### On the Merits
(83 P. (2d) 434)

*George W. Thompson*, of Walla Walla, Washington, and *Jesse Crum*, of Elgin, for appellant.

*S. H. Burleigh*, of La Grande (Burleigh & Burleigh, of La Grande, on the brief), for respondent.

KELLY, J. Plaintiffs owned a third interest in an irrigation ditch constructed over and across sections 29 and 32 in township 2 north, range 39 east, Willamette Meridian in Union county, Oregon, and an earth and rock diversion dam across Gordon creek in said section 29. The land mentioned is suitable only for grazing.

Between the 15th day of July, 1936, and the 15th day of August, 1936, defendant was in possession and control of a band of sheep which, for about two weeks, were grazed on the land in said section 29, over which said ditch was maintained. Said land was owned by Mr. John Bain, and at said time was used for grazing purposes by defendant under and by virtue of an agreement with Mr. Bain.

Plaintiff's testimony tended to show that the supply of water in said irrigation ditch was materially lessened at the time said sheep were being grazed on said land by defendant and as a result various crops, depending on said supply of water, were seriously damaged. There is also testimony disclosing the nature and extent of damage to the ditch itself.

There is no testimony in the record by any one claiming to have seen said sheep driven upon or into said irrigation ditch. Testimony is in the record of the

presence in abundance of the tracks and manure of sheep in and about said ditch.

There is no direct testimony to the effect that defendant had personal supervision over said sheep. The testimony shows that camp tenders and herders employed by defendant were in charge of the sheep.

Defendant complains of the giving by the court of certain instructions, of the court's modification of some of the defendant's requested instructions; and of the court's action in overruling defendant's motion for a new trial. This motion, among other things, was based upon alleged insufficiency of evidence, excessive damages, absence of evidence to support the award of punitive damages and misconduct of the jury.

The presence of the sheep is admitted. The claim, that the ditch was damaged and as a result of such damage plaintiffs lost their crops, is supported by substantial testimony; and there is testimony that sheep will not of their own accord go into a ditch, but will jump it.

The tracks and manure of the sheep in, upon and about the ditch is a fact from which the jury might infer that the damage to the ditch was caused by the sheep.

The characteristic of sheep to avoid going into a ditch would justify the inference that in the instant case they were being herded or driven when their tracks about, upon and in the ditch were made.

It follows, therefore, that the question was presented whether such inference, namely, that at said time the sheep in question were being driven or herded, or the inference that they were grazing at will in the usual course; and also, if being herded, whether such herding was negligent and therefore actionable, or whether

such herding was done in the usual and ordinary course, free from negligence, and therefore not actionable.

We think that there was sufficient testimony to justify the trial court in submitting the case to the jury for such determination. We cannot say that the award of compensatory damages was excessive.

 Upon the question of punitive damages, there is nothing in the record challenging or questioning the fact that defendant had camp tenders and herders in charge of the sheep in question. While it is in evidence that for a day or two defendant, himself was at the premises in suit during the time that the sheep were there, there is nothing in the record tending to disclose that the damage to the ditch was done while defendant was present. There is nothing indicating that any unpleasantness or trouble had occurred between plaintiffs and defendant. As far as this record discloses, their only contact with each other occurred when one of the plaintiffs, Mr. Fuller, met the defendant and told him that the sheep were grazing on plaintiffs' land, whereupon defendant at once agreed to pay for such grazing. Nothing was said to defendant about any damage to the ditch. Defendant testified that he knew nothing about plaintiffs' claim for damages to the ditch until an attorney for plaintiffs, at Walla Walla, presented a demand for payment. This is not denied or controverted.

In this jurisdiction a principal cannot be held in punitive damages for the act of his agent committed without his knowledge and without ratification by the principal: *Gill v. Selling*, 125 Or. 587, 593 (267 P. 812).

The record does not sustain the award of punitive damages.

 Affidavits of two jurors are attached to defendant's motion for a new trial to the effect that the ver-

dict in suit was a quotient verdict. A juror cannot thus impeach a verdict.

Besides the affidavits just mentioned, there is also attached to defendant's motion for a new trial the following affidavit:

"State of Oregon ⎱ ss.
 County of Marion ⎰

I, Loban Beem, being first duly sworn, say; That I am a resident of Elgin, Union County, Oregon, and was in attendance at the trial of George A. Fuller and Violet C. Fuller, as plaintiffs,—vs—Joe Blanc, defendant, in the Circuit Court of the State of Oregon for Union County, and that I was present on the sidewalk in front of the court house immediately following adjournment of court on the evening of Friday, October 22nd, 1937, when there was present both the plaintiffs and their two sons Glen and Lowel Fuller and one of the jury women impanelled on the trial of the above cause, Mrs. Irene Conrad; That this jurywoman wanted to go to Elgin and she was invited by the plaintiff's to ride in one of their cars to Elgin; the plaintiffs having two cars present at the time, one car being driven by their son Glen Fuller, and one car by their son Lowell Fuller, and this jurywoman did enter one of the cars and ride to Elgin at the request of the plaintiffs. That Elgin is some 21 miles distant from La Grande." (Signature and jurat omitted.)

Two questions are here presented, first, whether a juror by such an affidavit may impeach the verdict of a jury of which he was a member; and, second, whether such conduct of plaintiffs and the jurywoman mentioned, warrants a reversal.

█ In some jurisdictions an exception to the rule that a juror may not impeach his verdict is found when the impeachment is based upon matter which does not

inhere in the verdict; but this court, speaking through the late Mr. Justice Burnett, has said:

"It is difficult to differentiate between matter which inheres in a verdict and that which does not. If it inheres, it must necessarily be an active agency in the production of the resultant verdict. To disclose it by the testimony of the jurors is to allow them to impeach their own oath-bound decision. If it does not inhere, it is negligible and not to be taken into account. The distinction about inherency is illogical, because whether the subject matter of the affidavit does or does not inhere, the use to be made of it is to stultify the jury and to destroy their decision at the behest of a recalcitrant minority. The principle is that while the shortcomings of jurors of which the plaintiff complains are grounds for a new trial, yet public policy preserves the secrecy of the jury-room and the independence of jurors to such an extent that they are not competent to testify against their own verdict. Neither can a minority, having assented to the finding, afterward renew the contest concluded in the jury-room. If the misconduct can be established by other evidence, it is available for rehearing, but, lacking the proof which the policy of the law, supported by the weight of authority, recognizes, the moving party must fail for want of testimony.

"We are not called upon to answer categorically the socratic argument of the petition about corruption, fraud and other wrongful acts occurring in jury trials; but will dismiss the subject by the intimation that the danger of prosecution for perjury may possibly deter the dishonest juror from unlawful action. At best a jury trial or any other method of settling disputes in which human beings are concerned can never reach mathematical precision. Indeed, it has been said that on all moral questions no one can be so absolutely in the right as to be able to say truthfully that his adversary is absolutely in the wrong. Impeded as we all are by the imperfections of humanity, we cannot expect that either courts or jurors can reach perfect exactitude in the trial of causes. Approximation is the

highest result attainable, and the wisdom of the great weight of authority, with the end in view that litigation should some time be terminated, has said that when an issue is committed to twelve men under the sanction of a solemn oath, those same triers will not be allowed to stultify themselves by affidavits contrary to their decision." *Hinkel v. Oregon Chair Co.*, 80 Or. 404, 410 (156 P. 438, 157 P. 789).

The facts disclosed by the jurors' affidavits in the Hinkel case differ from that which is shown in the instant case; and we pass to a consideration of whether we should reverse this case because of the fact stated in such affidavit.

■ At the outset let it be known that we disapprove such conduct; but, for the purposes of this case, we think it does not justify us in holding that the learned and experienced trial judge abused his discretion in refusing to grant a new trial because of it.

It will be noted that it does not appear that either of the plaintiffs was in the car at any time when the juror was riding in it. It does not appear that there was any inconvenience or expense incurred by plaintiffs, or either of them, because the juror took the ride. It is reasonable to infer from the statement, in the affidavit, to the effect that the juror wanted to go to Elgin, that she made that want manifest to plaintiffs in such a way that ordinary courtesy required them to take cognizance of it.

The distinction is obvious between this case and that of *Sandstrom v. Oregon-Washington R. & Nav. Co.*, 69 Or. 194 (136 P. 878, 49 L. R. A. (N. S.) 889), wherein it is disclosed that the attorney invited all of the jurors into a place of refreshments, and there treated them to ice cream. The distinction is that in the case at bar one juror was furnished a ride, just that and nothing

more, while in the Sandstrom case, above cited, the attorney for defendant was guilty of treating the entire jury.

It will be observed under the subject: "Contact between juror and party or attorney during trial of civil case as ground for new trial", the editor of A. L. R. recognizes the distinction between these two classes of cases: 55 A. L. R. p. 750, et seq.

There, the following cases are cited which tend to support the view that merely giving a juror a ride, while reprehensible, does not necessarily require a reversal of the trial court's denial of a new trial: *Midland Valley R. Co. v. Barkley*, 172 Ark. 898 (291 S. W. 431); *Ford v. Holmes*, 61 Ga. 419; *Bonnet v. Glattfeldt*, 120 Ill. 166 (11 N. E. 250); *Hilton v. Southwick*, 17 Me. 303 (35 Am. Dec. 253); *Alabama Power Co. v. Hall*, 212 Ala. 638 (103 So. 867). It must not be understood that we are holding that a reversal should ensue, if in the exercise of its discretion in that regard a trial court should grant a new trial because of such conduct. We hold merely that in the case at bar an abuse of discretion on the part of the trial court has not been shown.

For the foregoing reasons the judgment of the circuit court is modified by striking therefrom the award of punitive damages and as thus modified said judgment is affirmed.

It is ordered that defendant recover of and from plaintiffs his costs and disbursements on this appeal.

BEAN, C. J., and BELT and ROSSMAN, JJ., concur.