Argued January 7, reversed as to defendant MacDonald except as
to conversion damages; affirmed as to defendant Stride
August 8, 1974

FREDEEN, *Respondent, v.* STRIDE ET AL,
*Appellants.*
525 P2d 166

*William L. Hallmark,* Portland, argued the cause for appellants. With him on the briefs were McMenamin, Jones, Joseph & Lang, Portland.

*Frank M. Ierulli,* Portland, argued the cause and filed a brief for respondent.

BRYSON, J.

Plaintiff brought this action against two defendants for conversion of her dog. The trial court instructed the jury that both defendants were guilty of conversion as a matter of law. The jury returned a verdict against both defendants and awarded $500 for conversion of the dog, $4,000 for mental anguish, and $700 as punitive damages. On appeal defendants contend that the trial court erred in refusing to strike plaintiff's claim for general damages for mental suffering and for punitive damages.

We view the evidence in the light most favorable to the plaintiff. In December of 1969 plaintiff's German shepherd dog, Prince, was shot in the right hind leg while allegedly chasing sheep in Washington County. On Saturday, December 20, plaintiff consulted the defendant Dr. Richard L. Stride, a Portland veterinarian, for treatment of the dog. Plaintiff testified that Dr. Stride advised her that surgery could be performed at a cost of $150 to $300 but that he could not be certain the dog would recover completely. Because plaintiff could not afford the surgery and the dog was in extreme pain, Dr. Stride suggested, and plaintiff agreed, to have Prince put to sleep. Plaintiff left $10 with the doctor for this purpose.

The dog was not put to sleep immediately because the dog was left at Dr. Stride's office on a Saturday and the remains would not be picked up by the sanitation service until Monday. Over the weekend two young kennel helpers, Darold Berube and Gimmie

Vance, grew fond of the dog. On Monday Prince was scheduled for disposal, but Berube and Vance asked Dr. Stride if they might try to nurse the dog back to health and find a home for it. Dr. Stride consented.

During the next two weeks Prince made a good recovery from his injury. Defendant Maybelle Mac-Donald, an acquaintance of Gimmie Vance, learned that the dog was available. She visited Prince, observed his wound, and decided that she would take the dog to a family in California. She took the dog from Dr. Stride's clinic in the middle of January, 1970.

The family in California had obtained a dog, and Mrs. MacDonald was not able to leave the dog in California so when Mrs. MacDonald returned to Oregon she left the dog with her son in Scappoose, Oregon. Approximately six months later, while the son and Prince were visiting Mrs. MacDonald in Portland, plaintiff saw Prince with Mrs. MacDonald. Plaintiff testified that when she asked about the dog, Mrs. MacDonald denied that the dog could belong to plaintiff because the dog had been obtained from a veterinarian in California. Mrs. MacDonald denied making this statement. Plaintiff called Dr. Stride about the incident, and Dr. Stride admitted that the dog was alive and that she was "entitled to get the dog."

Neither defendant appeals from that portion of the judgment allowing $500 damages for conversion of the dog. Ordinarily a conversion does not cause the property owner sufficient mental anguish to merit an award of damages for pain and suffering and the amount of damages is limited to the value of the property converted. *See Hall v. Work,* 223 Or 347, 360-62, 354 P2d 837 (1960).

However, if mental suffering is the direct and natural result of the conversion, the jury may properly

consider mental distress as an element of damages. 4 Restatement of Torts § 927, Comment *1,* states, at 657:

> "If the deprivation is the legal cause of harms to the feeling, damages may be allowable for such harms, as where the defendant intentionally deprives the plaintiff of essential household furniture which humiliates the plaintiff, a result which the defendant should have realized would follow."

Although it is not necessary that the act constituting conversion of plaintiff's property be inspired by fraud or malice, mental suffering is a proper element of damages where evidence of genuine emotional damage is supplied by aggravated conduct on the part of the defendant. In *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968), we sustained an award of mental anguish damages against a defendant for entering the plaintiff's home and removing personal property without permission and in plain disregard of plaintiff's rights. *See also Hovis v. City of Burns,* 243 Or 607, 415 P2d 29 (1966) (negligent disinterment of the remains of plaintiff's husband); *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941) (invasion of privacy).

■ The first issue is the liability of defendant MacDonald for plaintiff's mental anguish and for punitive damages. A review of the transcript reveals there is no evidence that defendant MacDonald knew who was the former owner of the dog or what arrangements had been made by the former owner with Dr. Stride and whether or not he had the right to give her the dog. She had never heard of plaintiff, Mrs. Fredeen. Mrs. MacDonald heard through Gimmie Vance's mother that a dog might be available at Dr. Stride's clinic. Gimmie Vance informed Mrs. MacDonald that the dog had been injured and would have to be disposed of unless

a home could be found. Defendant MacDonald visited the clinic, observed the dog, and noticed that it limped slightly and that the hair had been shaved in the area of the injury. She testified that she knew the dog may have been shot in the leg but was told nothing about the owner. Her sole purpose in taking the dog was similar to that of the kennel attendants, Berube and Vance. She thought she knew of a home for the dog in California. She paid nothing to Dr. Stride for the dog other than the charge for a rabies shot, necessary to transport the dog to California.

We believe that Mrs. MacDonald could reasonably assume that a veterinarian like Dr. Stride would not offer a dog to strangers without charge unless he was justified in doing so. Her action was taken on the strength of information supplied by Dr. Stride's assistants, and her motivation under the circumstances was entirely benevolent. She did not intend to deprive the plaintiff of the dog nor did she act in conscious disregard of plaintiff's property rights. There was error in submitting damages for mental anguish and punitive damages to the jury as to defendant MacDonald.

■■ The next issue is the liability of defendant Dr. Stride for plaintiff's mental anguish. As to defendant Stride, the plaintiff testified that because she thought the dog was put to sleep she had nightmares and suffered emotionally and stated, "it was awful." This testimony could not be related back to the act of conversion in order to cause plaintiff mental anguish as the plaintiff agreed and consented to dispose of the dog. However, she did testify that after she discovered the dog was alive she called Dr. Stride and he affirmed that the dog was alive but told her, "that's between

the two of you. * * * I figured you thought the dog was dead and that you'd never find out." Plaintiff further testified that she did not call Mrs. MacDonald immediately and she "sat there and thought about it for awhile. I knew that the dog knew my children and that they must be living nearby. And I knew if we found out exactly where they were living, the children would go over and try to get the dog to come to us and that there would be all kinds of troubles. The dog would try to get away and get hurt." By coincidence the plaintiff and defendant MacDonald lived in the same neighborhood. We conclude that there is evidence to support the jury's verdict of damages for mental anguish against defendant Stride.

■ The remaining issue is the liability of defendant Stride for punitive damages. There is evidence from which the jury might conclude that defendant Stride's course of conduct in giving the plaintiff's dog to a third person without her consent constituted "sufficiently aggravated violation of societal interests to justify the sanction of punitive damages as a preventative measure * * *." *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306, 308 (1967). In other words, a veterinarian should not give a client's dog to a third person without the consent of the owner.

■ Defendants rely on *Gill v. Selling, et al,* 125 Or 587, 267 P 812 (1928), for the proposition that if one defendant is liable for punitive damages but the other is not, plaintiff has waived her claim to punitive damages by suing both defendants. We do not believe this is a sound rule. A true waiver must amount to an intentional relinquishment or abandonment of a known right. *Church v. Gladden,* 244 Or 308, 417 P2d 993 (1966).

If a plaintiff has been injured by several defendants, some having acted maliciously and others not, it is impossible under the rule in *Selling* for a jury to reach a just verdict as to all defendants as to punitive damages. The only alternative is for the plaintiff to sue the defendants separately, and this is not efficient judicial administration. Plaintiffs frequently join several defendants for no reason other than to avoid multiple trials, and there should be no penalty by the application of restrictive procedural rules. W. Prosser, Law of Torts 298 (4th ed 1971).

The rule in *Gill v. Selling, supra,* as to punitive damages, remains in a dwindling minority of states. Annot., 20 ALR3d 666 (1968). The rule has obtained the aura of legitimacy in our cases through repetition. It appears in three instances as dictum. *Bowles v. Creason,* 156 Or 278, 297-98, 66 P2d 1183, 1191 (1937); *Pelton v. Gen. Motors Accept. Corp.,* 139 Or 198, 205-06, 7 P2d 263, 266, 9 P2d 128 (1932); *Gill v. Selling, et al,* 125 Or 587, 594-95, 267 P 812, 58 ALR 1556, 1560 (1928). On other occasions the rule is recited but not applied. *Fuller v. Blanc,* 160 Or 50, 58, 77 P2d 440, 83 P2d 434, 435 (1938); *Paur v. Rose City Dodge,* 249 Or 385, 390, 438 P2d 994 (1968). Twice the rule has played a material role in the court's decision. *Gordon Creek Tree Farms v. Layne et al,* 230 Or 204, 237, 358 P2d 1062, 368 P2d 737, 748 (1962); *Leach v. Helm,* 114 Or 405, 413-15, 235 P 687, 690 (1925). Insofar as these cases, as to this rule, conflict with this opinion they are not to be followed. For this reason the punitive damages against defendant Stride are affirmed although reversed as to defendant MacDonald.

The judgment against defendant MacDonald is reversed except for $500 damages for conversion; the judgment against defendant Stride is affirmed.