Argued June 3, reversed with instructions October 2, 1968

DOUGLAS ET UX, *Appellants and cross-respond-
ents, v.* HUMBLE OIL & REFINING
COMPANY ET AL, *Respondents and
cross-appellants.*

445 P. 2d 590

*Prentiss K. Puckett,* Klamath Falls, argued the cause and filed briefs for appellants and cross-respondents.

*Cleveland C. Cory,* Portland, argued the cause for respondents and cross-appellants. With him on the brief were Clarence R. Wicks and Kenneth D. Stephens, Portland.

Before PERRY, Chief Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and RODMAN, Justices.

GOODWIN, J.

Plaintiffs, who were awarded compensatory damages for trespass and both compensatory and punitive damages for conversion, appeal from a judgment notwithstanding the verdict allowing compensatory damages only. The defendants cross-appeal from the judgment for compensatory damages.

Plaintiffs, husband and wife, owned and occupied a dwelling house in Klamath Falls. Plaintiff husband, referred to herein as Douglas, operated an Enco service station under a "Service Station Commission Agency Agreement" with the defendant Humble. The defendant Preston was Humble's agent supervising retail outlets in the region. Douglas fell behind in his account with Humble. Preston, whose duties included the collection of such accounts, learned that Douglas had left Klamath Falls on a trip. Preston thereupon paid a visit to the service station to investigate the situation.

Preston found an employee in charge of the station. The employee had in his possession a key to the Douglas family home. Upon request by Preston, the

employee went with Preston to the Douglas home and unlocked the door to admit Preston to the home. Preston examined the contents of the home. When he left, he took with him an adding machine, business records relating to the service station in question, records of repair work performed by Douglas for his customers, and credit-card applications which, until transmitted to Humble, were the personal property of Douglas.

The plaintiffs brought this action in two counts: one for trespass to their home; the second for the conversion of the articles of personal property taken by Preston.

The defendants asserted that, because the entry into the house was consented to by the employee, it was not a trespass.

The undisputed evidence was that the only purpose for which Douglas had authorized his employee to use the house key was to attend to the feeding of the Douglas's household pets. The evidence would, therefore, permit the jury to find that Preston's entry into the house was unauthorized. Such an entry would be a trespass. Restatement (Second) of Torts § 158 (1965). The fact that the employee may also have been a trespasser does not immunize Preston from the consequences of his trespass. Since there was a jury question on the issue of trespass, the defendants' cross appeal on that issue must fail.

In defense of the alleged conversion, the defendants asserted that a "Security Agreement" between Douglas and Humble gave Humble the right to seize the objects taken from the plaintiffs' home.

The contracts gave Humble certain security interests in personal property connected with the service-station business, and gave Humble the right, under certain circumstances, to remove the property from "the

premises on which the collateral is located." But the contracts, even if considered as creating an immediate right of possession in the defendants, did not cover everything taken by Preston.

The evidence revealed that Preston took not only the adding machine and business forms and records used in making periodic accounts to Humble, but also records entirely personal to Douglas and not covered by the security agreement. Assuming that the adding machine and part of the business records were covered by the security agreement, a matter which the evidence left in doubt, the jury nonetheless could have found a taking of property over which Humble had no right to exercise dominion and control. Such a taking would be a conversion. *Gowin v. Heider*, 237 Or 266, 304, 386 P2d 1, 391 P2d 630 (1963).

If the jury believed the plaintiffs' testimony, it could have found a conversion separate and apart from the trespass which accompanied the taking. The conversion issue, therefore, was properly before the jury, and the question of compensatory damages was properly submitted. *Williams v. International Co.*, 172 Or 270, 141 P2d 837 (1943).

As a general rule, punitive damages will be allowed only when the proof supports a finding that the defendant acted with improper motives or with willful, wanton, or reckless disregard for the rights of others. *Hall. v. Work*, 223 Or 347, 363, 354 P2d 837, 844, 366 P2d 533 (1960); *Fisher v. Carlin et ux*, 219 Or 159, 162, 346 P2d 641, 643 (1959). For a comprehensive study of the law of punitive damages in this state, see D. Hodel, *The Doctrine of Exemplary Damages in Oregon*, 44 Or L Rev 175 (1965).

We held recently that it is only in those instances

where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent that the use of punitive damages is proper. "Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard  *  *  *" of the rights of the victim. *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306 (1967).

Confronted with evidence from which a jury could find that Preston's conduct was an arrogant invasion of the rights of the plaintiffs, the defendants attempt to take the issue of punitive damages out of the case by asserting that one who converts the chattels of another in the good-faith belief that he has a right to take possession can be held liable for compensatory damages only. See *Perry v. Thomas et al,* 197 Or 374, 253 P2d 299 (1953). In order for the good-faith defense to come into play, however, the jury would have to believe that the tort-feasor acted in good faith. *Fowler v. Courtemanche et al,* 202 Or 413, 448, 274 P2d 258, 275 (1954).

In the case at bar, we cannot declare, as a matter of law, that Preston entertained a good-faith belief that the security agreements between his company and Douglas gave him the right without notice of default, demand, or a request for permission, to ransack a private dwelling and to remove the contents thereof while the owners were absent. The jury might have believed such a proposition; but it was not bound to do so. While the trespass and the conversion were pleaded as discrete torts, it was proper for the jury to consider all the facts of the case in deciding whether

Preston's conduct with reference to either tort warranted the civilizing influence of punitive damages.

The cross appeal contains five assignments of error. The first two assignments assert that the trial court erred in refusing to grant the defendants' motions for a directed verdict on the two causes of action in trespass and conversion. We have already noted that the issues of trespass and conversion were for the jury to decide from the evidence presented.

■ The third assignment asserts that the jury should have been instructed as a matter of law that the defendants were entitled under their contracts to enter the plaintiffs' home and remove the contents relating to the service-station business. The court was correct in refusing to give such instructions. The agreements did not give the defendants the right to invade the living quarters of the plaintiffs at the time and in the manner disclosed in the record.

■ The fourth assignment of error challenges an instruction which injected the possibility that Humble, by accepting late payments in the past, may have waived its security agreement insofar as the agreement may have created in Humble a right upon default to immediate possession of mortgaged personal property. Taken out of context, such an instruction would have been erroneous. See *Automotive Equip. v. 3 Bees Logging,* 251 Or 105, 444 P2d 1019 (1968). Both parties, however, had bestowed substantial trial time on the security agreements. We do not believe that the trial court's reference to waiver, even though erroneous, could have been prejudicial to the defendants. The court was merely attempting to fashion an instruction to fit irrelevant evidence which both parties had placed before the jury without objection. The instructions as a whole were much more favor-

able to the defendants than the evidence warranted, but the plaintiffs have not challenged them.

The fifth assignment involved an instruction which permitted the jury to consider mental anguish, embarrassment, and humiliation in assessing damages for the trespass and conversion. Mental suffering is not compensable in the ordinary trespass or conversion action. See Annotation, 28 ALR2d 1070, 1091 (1953). There is, however, an exception to the general rule, and if mental suffering is the direct and natural result of a specific trespass or other tort, a jury can take such suffering into account. See, e.g., *Hovis v. City of Burns*, 243 Or 607, 612-613, 415 P2d 29 (1966) (unauthorized removal of a grave); *Hinish v. Meier & Frank Co.*, 166 Or 482, 506, 113 P2d 438, 138 ALR 1 (1941) (invasion of privacy). The jury's consideration of mental distress was not error. An invasion of a home by strangers is not so impersonal in its effect upon the householders that we can say as a matter of law that mental distress is never compensable. See Annotation, 28 ALR2d supra at 1076. The undisputed evidence below revealed that Mrs. Douglas came home to a house that had been ransacked and left in disorder and that she was understandably disturbed by the experience.

A case cited by the defendants for the general rule correctly states that mental suffering ordinarily is not compensable when a landowner tows away an automobile parked without permission on a posted parking lot. *Phillips v. Cordes Towing Serv.*, 50 Wash 2d 545, 313 P2d 377 (1957). But we believe that the social values offended in such cases are distinguishable from those offended in the case at bar.

The judgment is reversed with instructions to enter judgment on the verdict.