Argued October 29, affirmed November 18, 1970

MAYS, *Respondent, v.* CARNER, *Appellant.*

476 P2d 794

*Lynn Moore*, Springfield, argued the cause for appellant. With him on the brief were Moore & Wurtz, Springfield.

*Leslie M. Swanson, Jr.*, Eugene, argued the cause for respondent. With him on the brief were Johnson, Johnson & Harrang, Eugene.

Before O'CONNELL, Chief Justice, and DENECKE, TONGUE and BRYSON, Justices.

TONGUE, J.

This is an action for damages for conversion of a truck. The complaint alleges that defendant wrongfully took possession of the truck under a lien notice which falsely stated that defendant furnished labor, materials and storage until January 18, 1968, and that the truck was delivered to plaintiff on that date (within the required 60 day period for the filing of such a lien), whereas the last date for the furnishing of labor, materials and storage for the truck was January 8, 1968, and it was delivered to plaintiff on that date.

The complaint prayed for $50 special damages, $7,000 in general damages for mental anguish and humiliation, and $10,000 in punitive damages. Defendant appeals from a jury verdict and judgment for $7,191, including $4,500 in punitive damages.

Defendant's first assignment of error is that the trial court erred in permitting the jury to consider punitive damages and in giving an instruction on that issue. We have examined the entire record and find that there was substantial evidence to support the jury verdict for punitive damages.

Plaintiff offered both testimony and documentary evidence from which the jury could properly find the facts to be that on December 22, 1967, while driving from Seattle to his home in Klamath Falls, plaintiff's truck broke down near Oakridge and he left it at defendant's garage for repairs; that all such repairs were completed by January 8, 1968, and the truck was delivered to plaintiff on that date; that plaintiff then paid $115 in cash and was required to sign a promissory note for the balance of $62.20; that the note was originally dated January 8, 1968, and payable January 30, 1968, and that no labor, materials or storage were provided by defendant after January 8.

The evidence also supported findings that after plaintiff's failure to pay the promissory note when due and after expiration of the 60 day period for the filing of a lien notice, defendant, or one of his employees, changed the date of the note from January 8 to January 18, 1968, by inserting the figure "1"; that defendant, knowing that the 60 day period had expired, then signed an affidavit on March 18, 1968, stating that such labor and materials were "expended and performed * * * between January 8, 1968, and January 18, 1968," and "that 60 days have not elapsed since said storage, labor, skills and materials were expended on said chattel," well knowing that such affidavit was false, and that defendant's intent in the signing of that affidavit was to make possible the seizure of plaintiff's truck to foreclose a lien based upon a false affidavit.

Plaintiff also testified that on March 19, 1968, as he was leaving the home of his married daughter in Lowell for his own home in Klamath Falls, accompanied by a younger daughter, who was sick, a deputy sheriff, accompanied by a tow truck, served him with

the "notice of lien," including the false affidavit, and said that he had to take the truck to defendant's garage at Oakridge. Plaintiff persuaded the deputy to permit him to drive the truck to Oakridge, followed by the deputy. Upon arrival he met defendant, with the "papers" on his desk, and noticed that the date on the promissory note had been "changed." He was told, however, that he could not take the truck until the note and towing charges were paid. Having no other way to return to Klamath Falls with his sick daughter, he then paid the note and towing charges. He also demanded return of the note, marked "paid," but defendant refused to do so.

■ In our view, if the jury believed this evidence to be true, as it apparently did, the jury properly could have found that defendant was guilty of such willful, wanton and reckless misconduct, in disregard of the rights of others, as required to support an award of punitive damages. See *Dorn v. Wilmarth*, 89 Adv Sh 267, 269-71, 254 Or 236, 458 P2d 942 (1969); *Douglas v. Humble Oil & Refining Co.*, 251 Or 310, 314-15, 445 P2d 590 (1968); and *Noe v. Kaiser Foundation Hospitals et al*, 248 Or 420, 425, 435 P2d 306 (1967).

In addition to the question of punitive damages, defendant assigns as error the overruling of defendant's objections to testimony that in 1965 plaintiff suffered a disabling back injury as a construction worker and that at the time of the attempted seizure of plaintiff's truck, as he was about to return to Klamath Falls with his younger daughter, she had been sick to her stomach and vomiting and "had been very sick, weak."

Plaintiff also testified, without objection, to various personal and family problems at the time of

the attempted seizure of his truck and that the incident left him so "completely beside myself" that he broke down shortly afterwards and "cried like a baby." The testimony of a psychiatrist was also received, without objection, that although plaintiff had been able to "cope" with various personal and family worries prior to this incident, it precipitated a condition of "acute agitated depression of a psychoneurotic type," requiring medication by the prescription of an anti-depressant (tranquilizer) for a period of several months.

As previously stated, plaintiff's complaint claimed general damages for mental anguish and humiliation. No motion was made to strike such allegations, which were denied in defendant's answer, and the case proceeded to trial on the resulting issues, as thus made up by the parties through their respective pleadings.

■ As also previously stated, other evidence offered by plaintiff on that issue was received without objection and the only objection to this particular testimony was that it was not "relevant." In our view, testimony relating to plaintiff's physical and mental condition at the time of the attempt to seize his truck, including his previous physical disability and his concern over the illness of his daughter, was relevant to the issue of whether, and how much, mental anguish was suffered by him as a result of defendant's conduct. Thus, an objection that such testimony had no "relevancy to this case" had no validity beyond that of a general objection of such testimony.

It is well established that no reversible error results from the overruling of a general objection unless there appears to be no purpose whatever for which the evidence could have been admissible. *State v. Hoover*, 219 Or 288, 315, 347 P2d 69 (1959). In this case, however, we cannot say that this testimony was

inadmissible for any purpose, in view of the issues as made up by the pleadings and upon which the case was tried by the parties, which included the issue of mental anguish and humiliation. It follows that the trial court will not be reversed in this case for failing to sustain such an objection to these questions.

In so holding, we do not mean to say that recovery may necessarily be had for mental anguish in an action for conversion, assuming that such a question had been properly raised in this case. That question, however, was not raised by defendant on the trial of this case. On the contrary, this case was tried by both parties on the assumption that plaintiff was entitled to recover for mental anguish and humiliation if liability was established and if he proved such damages to the satisfaction of the jury.

At the time of argument on appeal, for the first time, and in response to a question by the court, defendant contended that such recovery was not proper in this case, but cited no authorities in support of that contention. In response, plaintiff cited the following authorities in support of such recovery. *Hinish v. Meier & Frank Co.*, 166 Or 482, 506, 113 P2d 438 (1941); 1 Harper and James, The Law of Torts, § 9.1; Prosser on Torts (3d ed) 44 and 49; and 64 ALR2d 100, at 106. See also *Douglas v. Humble Oil Refining Co.*, 251 Or 310, 317, 445 P2d 590 (1968). But see *Pakos v. Clark*, 253 Or 113, 453 P2d 682 (1969), and Restatement of the Law (2d) Torts § 46, comment (d).

In *Douglas v. Humble Oil & Refining Co., supra,* we held that recovery may be had for mental anguish in an action for conversion if it was the "direct and natural" result of defendant's conduct. Since, however, that question is not before the court in this case,

it is not necessary to decide whether that test is properly applicable under the facts of this case.

For all of these reasons, it follows that both of defendant's assignments of error in this case must be rejected.

Affirmed.