Argued and submitted September 21, 1992, affirmed on appeal; reversed on cross-appeal February 17, reconsideration denied March 24, petition for review allowed April 20, 1993 (316 Or 142)

Kenneth A. MORROW,
*Appellant - Cross-Respondent,*

*v.*

FIRST INTERSTATE BANK
OF OREGON, N.A.,
Richard Wilhelm, Darlene Kelly,
Velma Melson and Donna Buckles,
*Respondents - Cross-Appellants,*

*and*

CITY OF COOS BAY
and Lee Benson,
*Defendants.*

(89 CV 1253; CA A68472)
847 P2d 411

William R. Sharp, Eugene, argued the cause for appellant - cross-respondent. With him on the briefs were Edward T. Monks and Morrow, Monks & Sharp, P.C., Eugene.

Jeffrey M. Batchelor, Portland, argued the cause for respondents - cross-appellants. With him on the briefs were Robert E. Maloney, Charles F. Hudson and Lane Powell Spears Lubersky, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

Plaintiff appeals from a judgment against him on 4 of his 5 claims. Defendants cross-appeal the judgment against them on a fifth claim. We affirm on the appeal and reverse on the cross-appeal.

Plaintiff, an attorney, went to First Interstate Bank in Coquille with two of his clients. He had a cashier's check purchased by one of the clients, Lukas, which was drawn payable to a court for bail. Plaintiff explained to the bank teller that the check had not been used for bail and that the client had given the check to plaintiff for payment of legal fees. He asked to have the check cashed or for an explanation of what he had to do to get it cashed or made payable to him.

The bank teller called the branch office where the check had been drawn. She asked plaintiff if she could see the check. Plaintiff handed it to her. The teller continued to talk on the telephone, out of plaintiff's hearing. Plaintiff became suspicious and asked for the check back. The teller did not return it. Plaintiff continued to demand return of the check. The teller, who had been told by the person on the telephone to hold onto the check, did not return it, but said that they needed to talk to the bank manager. She left the teller window and went to the manager's desk. Plaintiff followed, walking through the teller's area.

The teller gave the check to the manager. Despite plaintiff's demands, the manager did not return the check to him. The manager picked up the telephone, apparently talking to the person from the issuing branch. Plaintiff explained to the manager how he came into possession of the check, and he again demanded its return. When the manager still did not return the check, plaintiff leaned over and grabbed the check from her.

Plaintiff was prosecuted for criminal trespass and harassment for his conduct at the bank, and he was acquitted. He then brought this action against the bank and its employees[1] for trespass to chattels, statutory conversion under ORS 73.4190, false imprisonment, malicious prosecution and intentional infliction of emotional distress. The trial

---

[1] Two other defendants are not parties to this appeal.

court dismissed the claims for trespass to chattels and intentional infliction of emotional distress.[2] The jury awarded plaintiff judgment for statutory conversion and found defendants not liable for either false imprisonment or malicious prosecution.

Plaintiff first assigns error to dismissal of the claim for trespass to chattels. The claim is based on the interference with plaintiff's possession of the cashier's check during the time that defendants retained the check despite plaintiff's demands for its return. The trial court dismissed the claim, because it concluded that the only damages alleged are not recoverable.

Plaintiff did not seek to recover damages for loss of possession of the check or for nominal damages. His complaint alleges:

"Plaintiff suffered humiliation, mental suffering and emotional distress as a result of the defendants' wrongful interference with his possession of his property, all to his general damage."

He argues that that claim for damages is sufficient.

The general rule is that emotional damages are not recoverable in the absence of some physical injury. Plaintiff asserts that there is an exception when the emotional damages are the direct, natural and proximate result of the defendant's conduct, relying on *Douglas v. Humble Oil*, 251 Or 310, 445 P2d 590 (1968). As we explained in *Meyer v. 4-D Insulation Co., Inc.*, 60 Or App 70, 74, 652 P2d 852 (1982):

"Sole reliance on that rule begs the question regarding the actions in which such damages have been recognized and allowed by Oregon courts. Such damages have been allowed on an *ad hoc* basis, but not on the basis of the 'common and predictable result' rule advanced by plaintiff.

"It is difficult to imagine a circumstance in which damage to any property does not directly, naturally and predictably result in some emotional upset. Unless some other line is drawn, as we believe there must be as a policy matter, neither the quality of a defendant's conduct nor the predictability of distress as a result of property damage alone or together form

---

[2] Plaintiff does not assign error to the dismissal of the claim for emotional distress.

a basis for an award of compensatory damages for emotional distress. Rather, *it is the kind of interest invaded that, as a policy matter, is believed to be of sufficient importance to merit protection from emotional impact, that is critical.*" (Emphasis supplied.)

Plaintiff alleges an intentional tort, trespass to chattels, which has been described as the "little brother of conversion." *Prosser and Keeton on Torts* 86 (5th ed 1984). It allows recovery "for interferences with the possession of chattels which are not sufficiently important to be classed as conversion * * *." *Prosser and Keeton on Torts* at 85. In contrast to conversion, in which the interference with the chattel is so great that the actor can justly be required to pay its full value, *Laursen v. Morris*, 103 Or App 538, 543, 799 P2d 648 (1990), *rev den* 311 Or 150 (1991), the gist of the lesser claim of trespass to chattels is the disturbance of the plaintiff's possession. *Swank v. Elwert*, 55 Or 487, 496, 105 P 901 (1910). We conclude that the interest in avoiding the temporary disturbance of one's right to possession is not of sufficient importance to merit protection when the *only* damage claimed is emotional. *Accord Flowers v. Bank of America*, 67 Or App 791, 794, 679 P2d 1385, *rev den* 297 Or 601 (1984). Accordingly, the trial court did not err in dismissing the claim for trespass to chattels.

Plaintiff's next group of assignments relates to the trial court's exclusion of certain impeachment evidence that plaintiff sought to elicit to show that the witness, Jeffery, was biased or interested in the outcome of the case. Jeffery is the deputy district attorney who unsuccessfully prosecuted the criminal case against plaintiff. Plaintiff sought to establish that, after the criminal case was completed, the trial judge made remarks critical of the prosecution and that Jeffery then stormed out of the courtroom. The evidence, plaintiff claims, would show that Jeffery had an interest in giving favorable testimony that would help the bank obtain a judgment against plaintiff, because defendants' victory would vindicate him for his prosecution. Plaintiff also sought to introduce evidence that the three criminal trials that Jeffery had prosecuted against clients of plaintiff had all resulted in acquittals. That evidence, he asserts, would show that Jeffery could have an axe to grind with plaintiff.

Plaintiff argues that the evidence should have been allowed, because it is always permissible to show bias or interest of a witness. Defendants counter that the trial court had discretion to refuse to admit the evidence and that there was no abuse of discretion.

 Plaintiff is correct that it is always permissible to show the interest or bias of an adverse witness. *Clevenger v. Schallhorn*, 205 Or 209, 215, 286 P2d 651 (1955); OEC 609-1. However, that does not mean that *all* evidence that is relevant to bias or interest of a witness need *always* be admitted:

> "The trial judge, in his or her discretion, may limit the extent of such evidence pursuant to OEC 403.[3] However, the cross-examiner must be given the opportunity to establish sufficient facts from which the bias or interest may be inferred, because it is always permissible to show bias or interest. Where bias or interest is shown, but further questioning is objected to, the decision is within the discretion of the trial judge. However, where the questioning is curtailed before bias or interest is shown, the decision is an error of law." *State v. Hubbard*, 297 Or 789, 800, 688 P2d 1311 (1984).

The first question is whether the evidence that plaintiff sought to introduce was relevant to show Jeffery's interest in the outcome of the case. The trial court correctly observed that statements by the trial judge in the criminal case against plaintiff that were critical of the prosecution, and Jeffery's angry reaction to them, would show that Jeffery was angry at the judge. It is also possible, though more tenuous, that the statements would tend to show that Jeffery was interested in the outcome of this litigation as a way of vindicating himself for the dressing down that he had received from the judge in the criminal court. We cannot say that it has *no* tendency to make the existence of the fact of bias or interest more probable. *See* OEC 401. The same can be said for the fact that Jeffery lost the three prosecutions against plaintiff's clients. Therefore, the evidence that he sought to elicit was relevant to impeach Jeffery.

---

3 OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

The question then is whether the trial court had discretion to exclude it, despite its relevance. If there was already evidence from which the jury could have inferred Jeffery's bias or interest, the trial court's exclusion on the basis of OEC 403 was within its discretion and was not error.

The jury was aware that Jeffery had prosecuted plaintiff for the incidents at the bank and that Jeffery had lost that case. It was also aware that Jeffery had prosecuted some clients of plaintiff's and that those clients had, in turn, brought legal actions against Jeffery and one of them had filed a Bar complaint against him. We conclude that those facts presented sufficient facts from which the jury could have inferred that Jeffery did not like plaintiff and would have an interest in providing testimony favorable to defendants. There was no error in excluding the other, essentially duplicative evidence.

Plaintiff's final assignments relate to jury instructions on the malicious prosecution case. They do not require discussion. We affirm on the appeal.

On cross-appeal, defendants assign error to the denial of their motion for directed verdict on the claim for conversion of the cashier's check. ORS 73.4190. They assert that they should not be liable for conversion, because the check was withheld from plaintiff for less than 20 minutes, after which he regained its possession. They argue that there was no damage and that plaintiff is not entitled to claim conversion, because he was not a holder of the instrument.

ORS 73.4190 provides, in part:

"(1) An instrument is converted when:

"(a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or

"(b) Any person to whom it is delivered for payment refuses on demand either to pay or to return it;

"* * * * *

"(2) In an action against a drawee under subsection (1) of this section the measure of the drawee's liability is the face amount of the instrument. In any other action under subsection (1) of this section the measure of liability is presumed to be the face amount of the instrument."

Plaintiff asserts that, because the drawee bank and its employees refused to return the check on his demand, they are necessarily liable in conversion for the damages provided for by statute. Defendants argue that the short-term interference with plaintiff's possession was not sufficiently egregious to justify an award of damages, particularly not for the face amount of the check, because plaintiff got the check back. The bank asserts that its liability for the face amount of the check would expose it to double liability, because the check was payable to an out-of-state court and payment of the statutory damages to plaintiff would not satisfy its obligation to pay the check to the payee.

The Uniform Commercial Code tells how an instrument can be converted. ORS 73.4190(1). It does not, however, set out the elements for a claim of conversion. ORS 71.1030 provides that,

> "[u]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity * * * shall supplement its provisions."

Thus, the elements for conversion are found in the common law. *See Yeager & Sullivan, Inc. v. Farmers Bank*, 162 Ind App 15, 317 NE2d 792 (1974); *Hecker v. The Ravenna Bank*, 237 Neb 810, 468 NW2d 88 (1991).

■ In Oregon, conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 253 Or 658, 663, 456 P2d 1004 (1969) adopting *Restatement (Second) of Torts* § 222A(1) (1965). Under ORS 73.4190(1), there are various ways in which a person may exercise that dominion or control. However, under the common law, the *extent* of interference must be so serious that the court may justly force a sale of the chattel to the defendant.[4]

---

[4]

"In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:

"(a) the extent and duration of the actor's exercise of dominion or control;

"(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

■ The evidence was that defendants held onto the check and refused to return it on demand. They thereby exercised dominion or control. However, the face of the check did not show plaintiff as the person entitled to payment. The interference lasted less than 20 minutes, after which plaintiff regained possession, albeit by force. The interference with his possession, although it may have been of sufficient magnitude to amount to trespass to chattels, was not so significant an interference that defendants may justly be required to pay the face amount of the check. *See* ORS 73.4190(2). Accordingly, we hold that plaintiff did not prove his claim for conversion. The trial court erred when it denied defendants' motion for directed verdict on that claim.

Affirmed on appeal; reversed on cross-appeal.

---

"(c) the actor's good faith;

"(d) the extent and duration of the resulting interference with the other's right of control;

"(e) the harm done to the chattel;

"(f) the inconvenience and expense caused to the other." *Mustola v. Toddy, supra,* 253 Or at 663 (adopting *Restatement (Second) Torts* § 222A(2) (1965)).