Argued and submitted July 6, reversed and remanded
for further proceedings October 4, 1983

## NEARING et al,
*Petitioners on Review,*

*v.*

## WEAVER et al,
*Respondents on Review.*

(TC 26761; CA A22918; SC 29424)

670 P2d 137

Simon J. ffitch, Hillsboro, argued the cause and filed brief for petitioners on review. With him on the brief were Ruth Gundle, Portland, and Oregon Legal Services Corp.

Christopher E. Burris, Portland, argued the cause and filed brief for respondents on review. With him on the brief were David P. Morrison and Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

LINDE, J.

Jones, J., filed a concurring opinion.

Peterson, C. J., filed a dissenting opinion in which Campbell, J. joins.

## LINDE, J.

In 1977 the Legislative Assembly enacted an "Abuse Prevention Act" to strengthen legal protection for persons threatened with assault by a present or former spouse or a cohabitant. 1977 Or Laws ch 845. The means chosen for this purpose included the use of temporary restraining orders, injunctions, and temporary child custody orders, former ORS 107.715 (1979), now ORS 107.716, and mandatory provisions for the warrantless arrest upon probable cause of a person believed to have violated such an order. ORS 133.310(3).[1] The present case requires us to decide whether officers who knowingly fail to enforce a judicial order under the 1977 act are potentially liable for resulting harm to the psychic and physical health of the intended beneficiaries of the judicial order, over defenses of official discretion and official immunity. We hold that these defenses do not preclude potential liability.

The case is on appeal from the circuit court's summary judgment for defendants, affirmed by the Court of Appeals. The Court of Appeals did not explain the basis for its decision.

■ The complaint alleged the following facts. Plaintiffs are Henrietta Nearing and her two children, Robert and Jeanette, respectively 4 and 3 years old. Henrietta Nearing was separated from her husband in November 1979. On April 16, 1980, the husband entered plaintiffs' home without permission

---

[1] ORS 133.310(3):

"A peace officer shall arrest and take into custody a person without a warrant when the peace officer has probable cause to believe that:

"(a) There exists an order issued pursuant to ORS 107.095 (1)(c) or (d), 107.716 or 107.718 restraining the person; and

"(b) A true copy of the order and proof of service on the person has been filed as required in ORS 107.720; and

"(c) The peace officer has probable cause to believe that the person to be arrested has violated the terms of that order."

Another section mandates arrests when an officer at the scene of a domestic disturbance has probable cause to believe that one person has assaulted another or placed the other in fear of imminent serious physical injury. ORS 133.055(2). If the facts occurred as pleaded in the present case, one of the defendant officers may have confused "on the scene" arrests under that section with arrests to enforce a restraining order under ORS 133.310(3).

and struck Henrietta. She reported this to one of the defendant police officers, Martin Weaver, causing her husband to be arrested and charged with assault. The next day the circuit court issued an order restraining the husband from molesting plaintiffs or entering the family home. The order was served on the husband, and a copy of the order and proof of service were delivered to the police department of defendant City of St. Helens.[2]

On May 12 and 13, 1980, the husband again entered plaintiffs' home without permission, first damaging the premises, and thereafter attempting to remove the children. Henrietta Nearing reported these incidents to defendant Weaver and asked him to arrest her husband because she was frightened of his violent proclivities. The officer confirmed the validity of the restraining order and the damage to plaintiffs' home but declined to arrest the husband on the ground that the officer had not seen the husband on the premises.

On three subsequent occasions in May, 1980, the husband returned to plaintiffs' address, sought entry to the home, and on the last occasion assaulted Henrietta's friend and damaged his van. When Henrietta reported this to defendants Weaver and Sauls on May 27, 1980, Weaver told her that the St. Helen's police would arrest the husband for violating the restraining order "because it was Robert Lee Nearing Sr.'s second offense," but no such action was taken. Two days later, on May 29, Nearing, Henrietta's husband, telephoned her and threatened to kill her friend. On June 1, Nearing intercepted

---

[2] This was required by the act, as amended by 1979 Or Laws ch 522:

"(1) Whenever a restraining order, as authorized by paragraph (c) or (d) of subsection (1) of ORS 107.095 or ORS 107.715 which includes bail and an expiration date pursuant to ORS 107.715 and this section, is issued and the person to be restrained has actual notice thereof, the petitioner shall deliver forthwith to a law enforcement agency a true copy of proof of service on the respondent and a true copy of the order. Upon receipt of a true copy of proof of service and a true copy of the order, the law enforcement agency shall forthwith enter the order into the Law Enforcement Data System maintained by the Executive Department. Entry into the Law Enforcement Data System shall constitute notice to all law enforcement agencies of the existence of such order. Law enforcement agencies shall establish procedures adequate to insure that an officer at the scene of an alleged violation of such order may be informed of the existence and terms of such order. Such order shall be fully enforceable in any county in the state."

ORS 107.720(1) (1979). After the events in this case, the statute was amended by 1981 Or Laws ch 780 and 1983 Or Laws ch 561, § 3.

the friend and plaintiffs in front of the home, repeated the threat, and assaulted the friend.

The complaint alleges the defendant officers' knowledge of the relevant facts. It further alleges that as a "proximate result"[3] of their failure and refusal to arrest her husband, Henrietta has suffered "severe emotional distress and physical injuries" further described in the complaint and that the children have suffered "acute emotional distress," have been "upset," have had difficulty sleeping, and have suffered "psychological impairment."

Defendants denied the allegations except for the identity and status of defendants and pleaded affirmative defenses of immunity and discretion. Plaintiffs moved to strike the affirmative defenses and assigned denial of the motion as error on appeal.

Defendants' first contention in the circuit court and on appeal is that plaintiffs' action is one for damages for the negligent infliction of emotional distress, and that Oregon law does not allow recovery on this theory. Plaintiffs counter that Oregon law does allow recovery of damages for psychic or emotional harm when defendant's conduct infringes some legal right of the plaintiff independent of an ordinary tort claim for negligence. Plaintiffs are right. In a recent review of the cases, we stated:

> "If there are few causes of action for psychic or emotional harm as such, the reason is not found in objections to monetary damages for harm of that nature. The reason may be found by focusing, not on the nature of the plaintiff's loss, but on the source and scope of the defendant's liability. This court has recognized common law liability for psychic injury alone when defendant's conduct was either intentional or equivalently reckless of another's feelings in a responsible relationship, or when it infringed some legally protected interest apart from causing the claimed distress, even when only negligently."

---

[3] Cases reaching this court show that the practice of repeating familiar old formulas in pleadings, motions, or instructions survives unaffected by the court's repeated reminders that "proximate cause" is not an element in Oregon tort law. *See Norwest v. Presby. Intercomm. Hosp.*, 293 Or 543, 560 & n. 19, 652 P2d 318 (1982); *Mooney v. Johnson Cattle*, 291 Or 709, 718 n. 10, 634 P2d 1333 (1981).

*Norwest v. Presbyterian Intercommunity Hospital, supra* n. 3, at 558-59 (footnotes omitted).[4]

The question, therefore, is whether plaintiffs pleaded an infringement by defendants of a legal right arising independently of the ordinary tort elements of a negligence action. It is clear that plaintiff did so.

The complaint alleges facts that, if proved, obliged the St. Helens police officers to respond to plaintiffs' call for protection against the exact kind of harassment by the elder Robert Nearing that is said to have occurred, and it alleges that the officers refused to enforce the restraining order in the manner prescribed by law. The duty defendants are alleged to have neglected therefore is not an ordinary common law duty of due care to avoid predictable harm to another. It is a specific duty imposed by statute for the benefit of individuals previously identified by a judicial order.

The parties in the circuit court gave most attention to *Brennen v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979). In that case a clerk had failed to enforce an ordinance requiring an applicant for a taxicab license to show adequate liability insurance. This court held that the city was liable to a passenger injured in an inadequately insured taxicab. The city had no duty to impose such an insurance requirement, but once the requirement was imposed by the ordinance, the clerk and therefore the city were under a duty to enforce it. Therefore they were liable to a member of the class sought to be protected for the foreseeable harm of the kind to which the ordinance was directed.

The clearest precedent for the present case, however, is *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977), in which plaintiff's legal interest also was established by a specific court order designed to protect plaintiff against the very harm that occurred. In *McEvoy,* the order directed an attorney not to return his client's passport to her until she returned her

---

[4] As examples of independent legally protected interests, we cited an invasion of privacy, *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941); unauthorized removal of a spouse's remains, *Hovis v. City of Burns,* 243 Or 607, 415 P2d 29 (1966); interference with use and enjoyment of the land, *Edwards v. Talent Irrigation Dist.,* 280 Or 307, 570 P2d 1169 (1977); and trespass to a home and conversion of personal property, *Douglas v. Humble Oil,* 251 Or 310, 445 P2d 590 (1968), and *Fredeen v. Stride,* 269 Or 369, 525 P2d 166 (1974).

child to his father, in order to prevent the client from fleeing the country with the child. The father was held to have a claim for mental anguish when the lawyer failed to comply with the order and the mother took the child abroad. Because the sources of defendants' duty in this case, as in *McEvoy,* were designed to protect plaintiffs against the type of harm which allegedly occurred, it is no defense that plaintiffs claim is for psychic and emotional injuries.

In explaining their claim to the trial court as well as on appeal, plaintiffs described it as a type of action for defendant's negligent failure to perform their duty, as in *Brennen* and *McEvoy,* though the words "negligent" or "negligence" neither were nor had to be used in the complaint.[5] This invited possible confusion insofar as there is no cause of action for negligent infliction of purely psychic or emotional injury as such, unsupported by a violation of some more specific duty toward the plaintiff. In this case a duty specifically towards these plaintiffs arises from the statute coupled with the court order. A plaintiff, of course, may plead and argue an action both under a theory of negligence and under another statutory or common law theory if he or she so chooses; actions based on injuries from defective products are a familiar example. When separate legal theories are said to require the same result on the same alleged facts, that contention should be made clear.

In this case, the issue below was the adequacy of defendants' defenses; no objection is raised to plaintiff's complaint. And plaintiff's reference to "negligence" in this case was immaterial to the alleged liability, if "negligence" is used in the sense of "carelessness" or "failure to use due care" rather than merely as a conventional legal totem, because the result would not be different if defendants had acted, or failed to act, willfully or intentionally or with some other state of mind. It must be recalled what role the allegation of "negligence" plays in an ordinary common law case. In general terms that role is to invoke a duty to take reasonable care not to cause a risk of a foreseeable type of harm to a foreseeable class of plaintiffs. Here the risk, the harm, and the potential plaintiff

---

[5] We recently noted that Oregon rules require a pleader to state "the ultimate facts constituting a claim for relief," ORCP 18 A., rather than pleading a form of action (in that case, the "common counts in assumpsit"). *Davis v. Tyee Industries, Inc.,* 295 Or 467 (1983).

were all foreseen by the lawmaker and, in *McEvoy* and in this case, by a court. It was not left to the clerk in *Brennen,* the lawyer in *McEvoy,* or the officers in this case to foresee a possible risk and to form a "reasonable" opinion as to what "due care" might be required to avoid it. Such *ad hoc* judgments are exactly what the legislature meant to overcome when it enacted the obligation to enforce judicial orders.

■ This does not mean that the obligation creates absolute liability for resulting harm. There may be various defenses, for instance that the defendant made a good faith effort to perform, or that he was prevented from doing so by one or another obstacle, either factual or legal. The officer would not be liable, for instance, for failing to make an unconstitutional arrest. Whatever would be a defense under the statute is a defense to civil liability. But such defenses differ from a claim that failing to perform the duty created by the legislature to prevent harm by enforcing court orders is nothing other than a lack of due care toward the world at large and that liability therefore extends only to physical but not psychic or emotional injuries actually caused by that failure.

The order here differed from that in *McEvoy* because it was addressed to the husband rather than to defendants. Nonetheless it clearly gave rise to a duty of defendants toward the plaintiffs under the 1977 act. ORS 133.310(3) prescribes that a peace officer "shall arrest and take into custody a person without a warrant" when the officer has probable cause to believe that an order under the statute has been served and filed and that the person has violated the order. Subsection (3) appears after two subsections that state when an officer "may" arrest a person without a warrant, and the contrasting use of "shall" in subsection (3) is no accident. The widespread refusal or failure of police officers to remove persons involved in episodes of domestic violence was presented to the legislature as the main reason for tightening the law so as to require enforcement of restraining orders by mandatory arrest and custody. Even though the arrested person is entitled to be released pending an eventual adjudication of a criminal charge or contempt, ORS 107.720(3), the temporary removal was deemed essential to emphasize the seriousness of the court's order and to permit the victims of violence to escape further immediate danger.

■ ■ Defendants argue that an officer's determination of probable cause to believe that a violation has occurred is a "discretionary function or duty" immune from liability under ORS 30.265(3)(c).[6] This claim is answered by *McBride v. Magnuson,* 282 Or 433, 578 P2d 1259 (1978). In that case a police officer claimed immunity for her decision to take a child into custody and to make a report of child abuse. This court held that an officer or employee is not engaged in a "discretionary function or duty" whenever he or she must evaluate and act upon a factual judgment. Discretion, we stated, exists only insofar as an officer has been delegated responsibility for value judgments and policy choices among competing goals and priorities.[7] Patently the purpose of ORS 133.310(3) was to negate any discretion of that kind in enforcing restraining orders issued under the Abuse Prevention Act. This conclusion does not depend on facts in the individual case. The circuit court erred in denying plaintiff's motion to strike this defense.

■ ■ Defendants also claim immunity by virtue of ORS 133.315, which provides that "[n]o peace officer shall be held criminally or civilly liable for making an arrest pursuant to ORS 133.055(2) or 133.310(3) provided he acts in good faith

---

[6] ORS 30.265(3) (1979):

"(3) Every public body and its officers, employes and agents acting within the scope of their employment or duties, or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598, are immune from liability for:

" . . . .

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

[7] "Many officers or employees carrying out the functions entrusted to them by others must frequently assess facts and choose how to act or not to act upon them. But not every exercise of judgment and choice is the exercise of discretion. It depends on the kind of judgments for which responsibility has been delegated to the particular officer. Discretion, as this court has noted in other contexts, involves 'room for policy judgment,' *Smith v. Cooper,* 256 Or 485, 502, 475 P2d 78, 45 ALR3d 857 (1970), *quoting Dalehite v. United States,* 346 US 15, 36 (1953), or the responsibility for deciding 'the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued,' *Antin v. Union High School Dist. No. 2,* 130 Or 461, 469, 280 P 664 (1929). It involves the delegated responsibility for 'assessment and ranking of the policy objectives explicit or implicit in the statute' and for the judgment that one or more of these objectives will be served by a given action, *Dickinson v. Davis,* 277 Or 665, 673, 561 P2d 1019 (1977)."

282 Or at 436-37. *See also Bradford v. Davis,* 290 Or 855, 864-65, 626 P2d 1376 (1981).

and without malice." That section provides immunity for making good faith arrests, not for failing to do so, and its obvious purpose is to reinforce the officer's duty to arrest on probable cause. To invert this text so as to grant immunity for failing to make an arrest required by the 1977 act, as defendants propose, would fly in the face of that legislative purpose. This affirmative defense also should have been stricken.

This disposes of the issues actually raised by the parties. We add the following response to assertions introduced by the dissent.

1. The dissent asserts that we "overrule" two cases in which the court declined to find defendants liable for injury resulting from alleged conduct contrary to statutes, *Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 630 P2d 840 (1981), and *Burnette v. Wahl*, 284 Or 705, 588 P2d 1105 (1978). Most of the dissent is devoted to that proposition.

Neither case was cited by defendants. Neither case holds that statutory duties never give rise to civil liability unless the legislature makes that intention explicit in the text or accompanying explanations.[8] We do not overrule either

---

[8] "It would, of course, be desirable if legislatures were to indicate their intention to allow or to withhold the right of those injured by violations of statutes passed for their benefit to recover damages from the violator, if not in each individual statute, than by enacting some general formula. That suggestion was made long ago in the House of Lords, in tones mixing resignation with frustration:

" 'To a person unversed in the science or art of legislation it may well seem strange that Parliament has not by now made it a rule to state explicitly what its intention is in a matter which is often of no little importance, instead of leaving it to the courts to discover, by a careful examination and analysis of what is expressly said, what that intention may be supposed probably to be. There are no doubt reasons which inhibit the legislature from revealing its intention in plain words. I do not know, and must not speculate, what those reasons may be. I trust, however, that it will not be thought impertinent, in any sense of that word, to suggest respectfully that those who are responsible for framing legislation might consider whether the traditional practice, which obscures, if it does not conceal, the intention which Parliament has, or may be presumed to have, might not safely be abandoned. . .'

"*Cutler v. Wandsworth Stadium Ltd.* [1949] A.C. 398, 410, quoted in *Fricke, supra* 76 L A Rev at 256."

*Bob Godfrey Pontiac v. Roloff, supra,* 291 Or at 341 (concurring opinion).

In *Oksenholt v. Lederle Laboratories,* 294 Or 213, 219, 656 P2d 293 (1982), we used the following analysis to determine if a federal regulation creating an obligation of drug manufacturers created corresponding state civil liability to doctors for breach of that regulation:

case, as the dissent claims; children still will have no statutory civil claim under the circumstances of *Burnette* nor litigants under the circumstances in *Bob Godfrey Pontiac* unless the legislature makes a change. Those cases relate to this very different statute only because the dissent extends their holdings to a general rejection of all liability whenever the underlying duty is established by the legislature rather than by judges. That conclusion, however, must be reached for different statutes on a case-by-case basis.

■　　The statutes in this case, ORS 133.310(3), and its companion, ORS 133.055, are unique among statutory arrest provisions because the legislature chose mandatory arrest as the best means to reduce recurring domestic violence. They identify with precision when, to whom, and under what circumstances police protection must be afforded. The legislative purpose in requiring the police to enforce individual restraining orders clearly is to protect the named persons for whose protection the order is issued, not to protect the community at large by general law enforcement activity.

■　　2.　The dissent states that this decision creates "strict" liability. That is a word of uncertain meaning. It is not liability without fault. We have made it clear that the liability is not absolute; there may be defenses. The governing standard of conduct is set by the statute, not by this decision.[9] If a statute merely calls on its addressee to exercise due care, that is the standard. This statute demands more of officers than the exercise of reasonable judgment whether to respond to requests to enforce known court orders; it mandates that they respond. That is the point of the statute.

　　3.　The dissent asserts that the plaintiffs did not make a claim based on the statute. To the contrary, plaintiffs'

---

"First, are physicians within the class intended to be protected by the regulation; second, does the regulation provide an exclusive or adequate civil remedy; and third, will a civil remedy for a physican as well as for an injured patient further the purpose of the regulation?"

[9] The reference in the concurring opinion to a defense that defendant "acted reasonably under the circumstances" could apply to the negligence theory there discussed, not to the issue whether the statutory duty has been observed. What constitutes compliance or excusable noncompliance is a matter of statutory interpretation; only whether the compliance or noncompliance occurred may be an issue of fact.

argument to the circuit court covered both a common law and a statutory theory.[10]

■　　　4. At bottom the dissent simply opposes tort liability for injuries caused by disregard of the statute on policy grounds, because it may cost local governments money. To that there are two answers. First, the same argument can be and no doubt was made against all claims under the Tort

---

[10] Plaintiffs' trial memorandum in opposition to the motion for summary judgment argued:

"*PLAINTIFFS' CLAIM IS BASED UPON DEFENDANTS' NEGLIGENT PERFORMANCE OF THEIR STATUTORY DUTY TO ENFORCE RESTRAINING ORDERS*

"Defendant's motion for summary judgment misconstrues the theory of plaintiffs' case. Ms. Nearing and her children are not seeking damages for the negligent or intentional infliction of emotional distress. Rather, her complaint is founded on the breach of the statutory duty owed her by Officers Weaver and Sauls. These defendants had an unequivocal obligation to arrest violators of restraining orders pursuant to the requirements of ORS 133.310(3)."

". . . .

"*PLAINTIFFS' CLAIM IS ALTERNATIVELY BASED UPON A SPECIAL DUTY*

"Ms. Nearing and her children's claim of negligence can be alternatively premised on the special duty owed her by virtue of her relationship with the St. Helens Police Department."

At oral argument on the motion, defendants argued:

". . . [t]he first thrust of defendant's Motion for Summary Judgment is that what we're dealing with here is a claim for relief for negligent infliction of emotional distress. . . ."

". . . .

". . . The plaintiffs have argued that in fact the police officers here violated Mrs. Nearing's legal right to have Mr. Nearing arrested, and they cite the statute — the Oregon statute which was designed to decrease domestic violence to protect battered spouses especially. . . ."

Plaintiffs replied:

"The defendant's motion completely misconstrues the . . . theory in this case. The case is not based upon either negligent or intentional infliction of emotional distress, rather it is based upon a statutory duty on the part of the police officers to arrest violators of restraining orders pursuent [sic] to ORS 133.310, Sub. 3.

". . . .

"I think also in construing the cause of action it's important to look at the plaintiffs' complaint, particularly paragraphs seven, eight and nine where we've pleaded that a restraining order was obtained by Mrs. Nearing and her children, that it was served on the — on Mr. Nearing and that a copy of both the Proof of Service and the restraining order was delivered to the defendant City Police. So, it's very clear that we're proceeding under the statute. . . ."

Claims Act, but the act was nevertheless enacted. This is a claim under the Tort Claims Act. If a private defendant would be liable for harm caused by failure to carry out a mandatory duty for the benefit of a specific person protected by a court order, as in *McEvoy v. Helikson, supra,* the Tort Claims Act makes a public defendant liable in the same manner. That policy decision was made by the legislature; it is not a new policy choice to be made in this case.

The second answer is that there is in fact no liability if the statute is followed. There is here no open-ended invitation to turn courts and juries loose to second-guess local policies. That might be true if all liability can only be negligence liability for lack of "due care," as the dissent seems to argue. But here the statutory duty is too plain to create such unavoidable risks of liability. When compliance with the statute, unless prevented by good cause, will avoid exposure to liability, the argument that there should be no liability because of the potential expense actually is an argument for a privilege not to comply with the statute. But that policy choice, like the policy of the Tort Claims Act, also has been settled by the legislature.

The circuit court's letter order and the arguments made to that court show that the court was persuaded as a matter of law that plaintiff could not recover for psychic and emotional injuries, as distinct from physical injuries that might have resulted from the same inaction by defendants. Because here, as in *McEvoy v. Helikson, supra,* there was a specific duty toward these plaintiffs, that proposition is incorrect. The decision of the Court of Appeals affirming the summary judgment must be reversed and the case remanded to the circuit court for further proceedings.

Reversed and remanded.

**JONES, J.,** concurring.

When plaintiffs' counsel first read the majority opinion in this case, they will probably feel like the child at Christmas who asked Santa Claus for a stuffed teddy bear, but instead received a real live cub. They received much more than they requested and the gift may prove to be not only awkward, but also dangerous.

The plaintiffs prayed for a claim of relief based solely on negligence; they received a claim of relief called "statutory

tort." The results of a "statutory tort" are speculative and may be harsh. For instance, is "discretion" always eliminated as a defense? Does comparative fault apply? Is a totally innocent act actionable? To what precedent are we cited for direction?

I submit the following as proof that plaintiffs based their cause of action solely on negligence and did not ask this court to impose liability on any other theory. In their petition for review, plaintiffs assert:

"A. Plaintiffs Have Alleged Physical Injury Accompanying their Mental Distress and are Entitled to Recover Damages Under the 'Traditional Rule.'

"Oregon and the majority of American jurisdictions provide a cause of action in *negligence* for mental distress when accompanied by subsequent physical injury. * * *

"* * * * *

"B. Under the Decisions of This Court, Recovery of Damages for Mental Distress is Allowed Where a Defendant's Conduct Infringes upon an Independent Legal Right of Plaintiff.

"Plaintiffs' complaint also states a cause of action under a second major doctrine recognized in Oregon. It is well settled that where a defendant's *negligent* conduct causes emotional distress, and where that same conduct constitutes the infringement of a legal right of the plaintiff, damages for the distress are recoverable whether or not physical injury is present. [Citations omitted.]

"* * * Defendants' *negligent* performance of their duties under the Abuse Prevention Act violated plaintiffs' independent legal right to enhanced police protection, and plaintiffs may recover for the mental distress suffered." (Emphasis added.)

The plaintiffs' pleading also sounds in negligence, claiming $143,000 general damages as a proximate result of defendants' failure and refusal to arrest Robert Lee Nearing, Sr.

In argument before the trial court, the court specifically asked plaintiffs' counsel this question:

"THE COURT: Mr. Hatton, I'm not sure I understand. If you're basing this cause of action on the violation of the statutory duty, are you claiming that they negligently or intentionally violated the statute?

"MR. HATTON: That it was negligence, Your Honor.

"THE COURT: Then the cause of action still sounds of negligence?

"MR. HATTON: Yes. They violated their common law duty to exercise due care in carrying out their statutory duty."

Plaintiffs' co-counsel then interjected:

"MISS GUNDLE: I just wonder if I could get a try at explaining the difference. The defendants have misunderstood the cause of action. They have understood it to be negligent infliction of emotional distress, which is a cause of action. It is not negligent infliction of emotional distress. *The cause of action is negligence. \* \* \*"* (Emphasis added.)

In the plaintiffs' trial memorandum, plaintiffs assert:

"PLAINTIFFS' CLAIM IS BASED UPON DEFEN-DANTS' NEGLIGENT PERFORMANCE OF THEIR STATUTORY DUTY TO ENFORCE RESTRAINING ORDERS"

Continuing with plaintiffs' trial memorandum, plaintiffs assert that their "claim of negligence can be alternatively premised on the special duty owed [them] by virtue of [their] relationship with the St. Helens Police Department." They claim "there exists a 'special relationship creating a duty to use due care for the benefit of particular persons or classes of persons.' "

Plaintiffs conclude their trial memorandum with the statement that "[p]laintiffs' damage claim is soundly based upon well-recognized principles of *negligence* law." (Emphasis added.)

All of this tells us that plaintiffs' theory of recovery has been and is based on negligence and no other theory Therefore, plaintiffs did not claim any "statutory tort" notion for recovery as set forth by Justice Linde in the majority opinion.

In *Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 328-29, 630 P2d 840 (1981), this court stated:

"From this review of decisions by this court it appears that although this court has stated circumstances under which it would 'create' or 'recognize' a new cause of action for damages for violation of a statute when there is no 'underlying' common law cause of action, the court has never done so to this date.

Indeed, this court has said, in effect, in *Burnette [v. Wahl]*, 284 Or 705, 588 P2d 1105 (1978)], that in a doubtful case it would not do so, but would leave the matter to the legislature. 284 Or at 712."

This is not a "doubtful case." I believe a claim for relief for negligent failure to act is implicit in the legislation and a violation of this statute would be negligence per se. When the evidence establishes that a party has violated a statute, such a party has the burden of producing evidence that, nevertheless, he was acting reasonably. Without such evidence the party is negligent as a matter of law. *Barnum v. Williams*, 264 Or 71, 79, 504 P2d 122 (1972).

Plaintiffs in this present case had a legal right, implied by statute, to be protected by the defendants. They may recover damages for proven mental stress, whether accompanied by physical disability or not, if they prove such damages were caused by defendants' violation of the statute. The defendants will be liable to them for such damages, unless defendants can prove by a preponderance of the evidence that they were acting reasonably under the circumstances then and there existing. All other relevant negligence law would be applicable, including comparative fault if warranted by the facts.

On remand, plaintiffs will probably play it safe and amend their pleadings to proceed on both theories: the first claim for relief based on "statutory tort," and the second claim for relief based on negligence implied by statute. I predict that future caselaw will probably develop, as it has in the products liability field where "strict liability" claims are gradually eliminating negligence claims, to the point where we will have a new class of "statutory tort" claims which will replace the traditional "statutory negligence per se" claims.

I concur in the result reached by the majority because the trial court should not have granted summary judgment.

**PETERSON, J.,** dissenting.

The majority has, for the first time, created a strict liability tort against public bodies and their police employees because "[t]he duty defendants are alleged to have neglected * * * is not an ordinary common law duty of due care to avoid predictable harm to another. It is a specific duty imposed by

statute for the benefit of individuals previously identified by a judicial order." 295 Or at 707. I dissent, for these reasons:

1. The holding of the majority opinion is inconsistent with a number of recent decisions of this court, which it overrules without a passing glance.

2. Public bodies and their employees are responsible for the performance of many duties for the benefit of the public. Their ability to perform those duties may depend upon a number of factors including availability of resources and demands of other mandated duties. Normally, tort liability requires a showing that the putative tortfeasor is guilty of socially *unreasonable* conduct. We should tread warily before holding public bodies and their employees liable without fault for damages arising from the failure to perform the duty imposed by ORS 133.310(3).

3. No party in this case has ever contended that public bodies or their employees should be liable, without fault, for failure to perform the statutory duty imposed by ORS 133.310(3). The majority's utterance is the first time that any strict liability doctrine has been discussed or considered in this case. The plaintiffs' theory of recovery has always been negligence. On its own, the majority has converted the case to one of strict liability without allowing any party the opportunity to argue or discuss the proposition, pro or con.

I

The contention that violation of a duty imposed by statute gives rise to a private right of action not known to the common law has been considered and rejected by this court several times in the last five years. *Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 630 P2d 840 (1981) is the most recent case. It involved a claim for damages against two attorneys for intentionally filing a false counterclaim against the plaintiff in an earlier case. The plaintiff's theory was that the defendants were liable because they violated ORS 9.460(4), which states:

"An attorney shall:

"* * * * *

"(4) Employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never seek to mislead the court or jury by any artifice or false statement of law or fact; * * *."

The trial court sustained defendants' demurrer to the plaintiff's second amended complaint and granted summary judgment in defendants' favor after plaintiff filed a third amended complaint. On plaintiff's appeal, the Court of Appeals affirmed.

Justice Tongue, writing for the court, carefully traced our precedents concerning whether violation of a statutory duty gives rise to a new and private cause of action for damages. I quote his analysis:

"[I]t is helpful to review previous decisions by this court in deciding, in different contexts, whether violation of a duty imposed by statute will give rise to a private cause of action.

"In this court's most recent discussion of this question, *Miller v. City of Portland,* 288 Or 271, 604 P2d 1261 (1980), it was noted (at 276-78) that an initial distinction must be made between (1) cases in which liability would be based upon violation of a statutory duty when there is also an underlying common law cause of action, and (2) cases in which liability would be based upon violation of a statute when there is no underlying common law cause of action.

"A common example of a case of the first type is an action for damages for negligence in which it is contended that violation of a duty imposed by statute is negligence per se in that the statutory duty is the standard of conduct of a reasonably prudent person, although the other elements of a cause of action for negligence must still be shown. The test for determining whether violation of a statute constitutes negligence per se in such a case, as stated in *Stachniewicz v. Mar-Cam Corporation,* 259 Or 583, 586, 488 P2d 436 (1971), is (1) whether the injured person is a member of the class intended by the legislature to be protected, and (2) whether the harm is of the kind which the statute was intended to prevent. *See also Miller, supra,* at 276.

"In *Miller,* however, it is stated that the approach to be taken by this court is somewhat different in cases in which there is no underlying common law cause of action and when the court is called upon to, in effect, 'create' or 'recognize' a new tort. 288 Or at 278. In such a case it must still be determined whether the plaintiff is a member of the class protected by the statute and whether the harm inflicted is the type intended to be protected against. The court must undertake further analysis, however, by an examination of the statute to

determine whether there exists any explicit or implicit legislative intent that a violation of a statute should give rise to a tort cause of action. *Miller, supra,* at 278.

"If no intent either way is evident from the statute, then, according to *Miller,* at 278, this court must attempt to ascertain how the legislature would have dealt with the problem had it been considered by the legislature. This is usually done, according to *Miller,* at 278, by *'looking at the policy giving birth to the statute and determining whether a civil tort action is needed to carry out that policy.'* (Emphasis added.) In *Miller,* upon application of these criteria under quite different facts, this court declined (at 279) to 'create' a new and private cause of action for damages for violation of a statute.[5]

"In *Burnette v. Wahl,* 284 Or 705, 588 P2d 1105 (1978), this court also declined to 'create' or 'recognize' a new private cause of action for violation of a statute, again under quite different facts. In that case we described (at 712) the question to be decided as being whether such a new tort action was 'necessary and desirable to further vindicate the right [of the aggrieved party] or to further enforce the duty created by the statute.' In employing the above analysis, this court in *Burnette* emphasized that in such a case it is the court, and not the legislature, which is 'creating' or 'recognizing' the new cause of action, stating (at 711-12) that:

" 'The establishment by courts of a civil cause of action based on a criminal or regulatory statute is not premised upon legislative intent to create such an action. It is obvious that had the legislature intended a civil action it would have provided for one, as legislatures many times do. Therefore, the underlying assumption is that it was not intended that the statute create any civil obligation or afford civil protection against the injuries which it was designed to prevent. When neither the statute nor the common law authorizes an action and the statute does not expressly deny it, *the court should recognize that it is being asked to bring into existence a new type of tort liability on the basis of its own appraisal of the policy considerations involved. * * *

" 'Because it is plain to the legislature that it could have created the civil liability and it has not, courts must look carefully not only at the particular statute establishing the right or duty but at all statutes which might bear either directly or indirectly on the legislative purpose. *If there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the*

*total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires.'* (Emphasis added)

"Again, in *Farris v. United States Fidelity and Guaranty Company,* 284 Or 453, 587 P2d 1015 (1978), this court held that violation of provisions of the Insurance Code prohibiting certain conduct did not give rise to a tort action. The primary reason for so holding was that other provisions of the code provided for civil penalties payable to the state for code violations and that this was an indication that the legislature did not intend a private cause of action. 284 Or at 458.

"In *Brown v. Transcon Lines,* 284 Or 597, 588 P2d 1087 (1978), however, this court stated (at 604) that ORS 659.410, making it an unlawful employment practice to discriminate against a worker for applying for workers' compensation benefits, recognized a public policy that supported a civil action for damages for wrongful discharge by a worker discharged for applying for such benefits. The court made it clear, however (at 604 and 610-12), that it was not 'creating' or 'recognizing' a new cause of action in that case based upon violation of ORS 659.410, but was holding only that such an employee had an existing common law cause of action for wrongful discharge. *Brown,* therefore, is best characterized as an extension of an existing common law cause of action, rather than creation of a new cause of action. (See distinction by this court in *Miller, supra,* at 276-78, as previously noted.)

"In another recent case this court also used a violation of a statutory duty as the basis for finding liability under an existing common law cause of action for negligence, i.e., as negligence per se. *See Davis v. Billy's ConTeena, Inc.,* 284 Or 351, 587 P2d 75 (1978) (violation of ORS 471.130(1), prohibiting sale of liquor to minors, as negligence per se).

"From this review of decisions by this court it appears that although this court has stated circumstances under which it would 'create' or 'recognize' a new cause of action for damages for violation of a statute when there is no 'underlying' common law cause of action, the court has never done so to this date. Indeed, this court has said, in effect, in *Burnette,* that in a doubtful case it would not do so, but would leave the matter to the legislature. 284 Or at 712.

"The issue presented in this case is clearly one in which there is no underlying common law cause of action. In *O'Toole* this court rejected the contention that alleged violations of ORS 9.460(3) and (7) provided the basis for a common law

action for damages for negligence. Also, because ORS 9.460 was originally enacted in 1862, we find nothing in the statute or its legislative history to indicate that the legislature intended that there should be liability for violation of its provisions. Thus, in this case, as in *Miller* and *Burnette,* this court must decide, 'on the basis of its own appraisal of the policy considerations involved,' whether to 'bring into existence a new type of tort liability' for damage to reputation and for attorney fees against an attorney who has allegedly violated the provisions of ORS 9.460(4).

"The concurring opinion by Linde, J., is critical of our quotations from *Miller* and *Burnette* and our application of the analysis adopted by this court in those cases to the problem presented in this case.

"It may be that in some future case this court will decide to abandon the analysis adopted by it in those cases and to adopt the analysis proposed by Linde, J. In this case, however, neither party has either questioned the analysis adopted by this court in *Miller* and *Burnette* or proposed that a different analysis be adopted by this court in this case. Under these circumstances, we believe it to be proper to not only decide this case by application of the analysis adopted by this court in *Miller* and *Burnette,* but in doing so to refer specifically to the analysis as adopted in those cases.

"This analysis of the problem presented in this case is similar to the analysis proposed by the Restatement of Torts (Second,) § 874A, for application in deciding when such liability should be imposed as follows:

" 'When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.'

"The official comment to the Restatement proposes that the primary test for application in determining whether to impose civil liability should be whether the new civil remedy is 'consistent with the legislative provision, appropriate for promoting its policy and needed to assure its effectiveness.' Comment f, § 874A." 291 Or at 325-330. (Footnotes omitted.)

For a number of reasons, we opted in *Bob Godfrey Pontiac* not to recognize a new cause of action based upon a

violation of the statutory duty, 291 Or at 332-337, three main reasons being: (1) that recognition of the new cause of action was not necessary to carry out the policy of the statute, 291 Or at 332; (2) that creation of the new cause of action would be inconsistent with long-established rules and practices, 291 Or at 334; and (3) that courts should go slowly in establishing new civil causes of action based upon a violation of statute because it is always possible for the legislature to establish a civil cause of action if it wishes to do so, 291 Or at 337.

Justice Linde concurred with the result but disagreed with the analysis quoted above.

Three years earlier, over a dissent by Linde, J., this court reached the same result in *Burnette v. Wahl*, 284 Or 705, 588 P2d 1105 (1978). There, in three identical cases, five minor children between the ages of two to eight brought actions against their mothers for emotional and psychological injury caused by failure of the defendant-mothers to perform their parental duties to the plaintiffs. The complaints alleged that the children were deserted and abandoned "maliciously, intentionally, and with cruel disregard of the consequences." 284 Or at 723.

The plaintiffs' principal reliance was upon a showing of a violation of statutes requiring parents to provide nurturing, support and physical care. Relative to the wisdom of creating a new civil cause of action, the opinion states:

> "The establishment by courts of a civil cause of action based on a criminal or regulatory statute is not premised upon legislative intent to create such an action. It is obvious that had the legislature intended a civil action it would have provided for one, as legislatures many times do. Therefore, the underlying assumption is that it was not intended that the statute create any civil obligation or afford civil protection against the injuries which it was designed to prevent. When neither the statute nor the common law authorizes an action and the statute does not expressly deny it, the court should recognize that it is being asked to bring into existence a new type of tort liability on the basis of its own appraisal of the policy considerations involved. If a court decides to create a cause of action for the act or omission which violates the statute, the interest which is invaded derives its protection solely from the court, although the legislative action in branding the act or omission as culpable is taken into consideration by the

court in deciding whether a common law action should be established. If a civil cause of action based upon a statute is established by a court, it is because the court, not the legislature, believes it is necessary and desirable to further vindicate the right or to further enforce the duty created by statute.

"Because it is plain to the legislature that it could have created the civil liability and it has not, courts must look carefully not only at the particular statute establishing the right or duty but at all statutes which might bear either directly or indirectly on the legislative purpose. If there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires. Courts have no omnipotence in the field of planning, particularly social planning of the kind involved here. Courts should exercise restraint in fields in which the legislature has attempted fairly comprehensive social regulations.

"There is no doubt but that the statutory provisions previously cited show a strong state policy of requiring the kind of parental nurturing, support and physical care of children which the defendants here are alleged to have denied their children. As previously indicated, it does not follow as a matter of course that it would be wise or judicious to vindicate that policy by a tort action for damages by children against their mothers." (Footnotes omitted.) 284 Or 711-712.

We rejected the plaintiffs' claims saying that "* * * there is a limitation to the extent to which use may be made of tort actions for the purpose of accomplishing social aims." 284 Or at 715.

If stare decisis has any residual life, we should follow these cases and reject the creation of a new, strict liability tort based upon a violation of ORS 133.310(3).

## II

Further reasons support my conclusion. The legislative history indicates, in clear terms, why this statute was needed. Police were chary about arresting battering spouses if the police had not witnessed the assault. Battered women were suffering as a result of police inaction. There is no question as to the need for the law or the goal of the law. But there is no suggestion in the legislative history — not a whisper — that it

was contemplated that a civil cause of action would be created against police and their employers if they failed to arrest.

Of course, as the opinions cited above make clear, this court still has the power to create a new type of tort liability "on the basis of its own appraisal of the policy considerations involved." *Burnette v. Wahl, supra,* 284 Or at 711. I do not believe that we should do so today—in this case—for these reasons.

First, the rule of strict liability created in the majority opinion is at variance with the salutary principle that the basis for tort liability normally is unreasonable conduct by the tortfeasor. The common thread in almost all torts is the idea of unreasonable interference with the interests of others. W. Prosser, Torts 6 (4th ed 1971). Although this court has, in the face of manifest need, created strict liability torts, *see Wights v. Staff Jennings, Inc.,* 241 Or 301, 405 P2d 624 (1965), we have rejected new civil torts for violation of statutes under facts similar to those at bar.

Second, this case involves public liability — the liability of the state, its cities and counties, and of peace officers employed by them. We declined to create a right of action against private persons in *Burnette v. Wahl, Miller v. City of Portland,* and *Bob Godfrey Pontiac v. Roloff,* all *supra.* I would tread even more gingerly in creating a new tort against public bodies and their employees. Public monies are scarce, and public responsibilities are multiplying. I do not favor compounding already hefty public problems by creating this new strict liability tort.[1] In addition, the overwhelming weight of authority holds that a breach of duty by a police officer creates no liability on the part of the officer to an individual who is damaged by a lawbreaker's conduct. *See* Annot., 41 ALR 3d 700-711 (1972). *See also* Note, 94 Harv L Rev 820 (1980-81). This is an extremely important question, not heretofore presented in either the trial court or the Court of Appeals, and we should not decide a question not presented.

This court is poorly equipped to make the kind of policy judgments the majority makes. We have no way of knowing

---

[1]According to recent newspaper reports, because of lack of funds one of Oregon's most populous counties, Lane County, is providing no sheriff patrol services in the county. Under the majority opinion a plaintiff would make out a prima facie case merely by showing a violation of ORS 133.310(3).

how today's decision will affect the ability of municipalities and counties to enforce the law and recruit and hire competent law enforcement officers. We have no way of knowing how much today's decision will exacerbate the fiscal problems of Oregon's cities. Given the prevalence of domestic strife, the effect upon a local government budget could be considerable. Furthermore, we have no way of knowing how today's decision might affect day-to-day law enforcement practices. Although the complaint alleges serious matters for which immediate police action was appropriate, other serious matters of consequence exist. The imposition of personal liability upon officers and upon their employers for failure to arrest could result in an inefficient use of scarce police resources in a period of social crisis or high crime.

Third, this is a new law. We have no information, one way or the other, whether the creation of a strict liability remedy against public bodies and their peace officers is necessary to vindicate the statutory policy. If peace officers are not doing their duty, I favor giving the legislature a further opportunity to look into whether the creation of such a cause of action is necessary. To this day, the public bodies and their employees have not yet been heard from, either by the legislature or any court.[2]

## III

A further reason exists for rejecting the majority's analysis. This case was not brought, tried, considered or appealed as a strict liability tort case. The plaintiffs repeatedly have characterized their claims as based upon negligence.[3] Uninvited, this court has created a new tort, a tort having far-reaching consequences to cities, counties, the state, and their peace officer employees. We need not and should not reach

---

[2]The legislative history shows no opposition to the measure by cities and counties. Had they had a glimmer of notice that a civil remedy was in contemplation, I am convinced that there would have been opposition to the bill.

[3]The plaintiffs' brief states:

"The questions presented on appeal are:

"1. As a matter of law, are plaintiffs entitled to recover for emotional harm caused as a result of defendants' negligence?"

Elsewhere in their brief the plaintiffs refer to these actions as "negligence actions" and they assert that the defendants "negligently performed this [statutory] duty."

this question without briefing or argument from any of the parties.[4]

This is a very significant question. The rule stated in the majority opinion will apply in every area of public activity, with potential strict liability arising from public failure to perform acts dictated by statute in every area of governmental endeavor. We should not reach the question in this case, unbriefed, unconsidered, and unenlightened.

## IV

I see this case as a negligence case, as did the plaintiffs' attorneys, the defendants' attorneys and the trial court. Considering it as a negligence case, I would affirm the trial court. The basis for the trial court's summary decision is clear. The record contains a letter from the trial judge to the parties which reads, in part, as follows:

> "After the argument of defendants motion for summary judgment, the Court took the matter under advisement for study of the memoranda and assorted materials supplied by counsel. That has been accomplished and the Court will now rule.
>
> "I am convinced that this is not the type of case in which Oregon Law favors or even suports [sic] an award of damages for emotional distress or mental anxiety. Since that is the basis for the damage claim of the plaintiffs, there is no issue as to any material fact and the motion therefore is well taken."

The trial court was right. This court generally has rejected negligence claims for mental distress unaccompanied by physical injury or physical consequences. The rule is stated in *Melton v. Allen,* 282 Or 731, 736, 580 P2d 1019 (1978):

> "It is true that this court has departed from the rigid rule of no redress for damages for mental disturbance without accompanying physical injury or physical consequences, as stated in *Adams v. Brosius,* 69 Or 513, 139 P 729 (1914), and *Rostad v. Portland Ry. Etc. Co.,* 101 Or 569, 581, 201 P 184 (1921). But in each instance in which we have allowed redress for mental disturbance without accompanying physical injury, it has been a case involving intentional acts of a flagrant character

---

[4]In a recent tax case having considerable significance to Oregon counties, on our own motion we invited the Association of Oregon Counties and the ACLU to file *amicus* briefs. *Grant County v. Guyer,* argued August 2, 1983, Supreme Court No. 29562.

under most unusual facts and circumstances which added to the weight of the plaintiff's claim, and each was clearly a serious invasion of the plaintiff's right and not feigned. See Prosser, Law of Torts 56-59, § 12 (4th ed 1971). The cases in which we have so departed have been those of outrageous conduct, invasion of the right of privacy, or some special circumstances of considerable magnitude." (Footnote omitted)

The mental distress sustained by the plaintiffs directly was caused by the husband and father. The participation of the peace officers alleged in the complaint is not the type of conduct which has supported the award of mental distress damages unaccompanied by physical injury. I would adhere to *Melton v. Allen* and affirm.

Campbell, J., joins in this dissent.